# United States Court of Appeals
## For the First Circuit

---

No. 99-1976

IN RE: WAYNE COUSINS, DBA COUSINS GARDENS; MARY C. COUSINS,

Debtors,

---

INTERNAL REVENUE SERVICE

Plaintiff, Appellant,

v.

MARY C. COUSINS; WAYNE COUSINS, DBA COUSINS GARDENS,

Defendants, Appellees.

---

LAWRENCE P. SUMSKI,

Trustee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW HAMPSHIRE

[Hon. Joseph A. DiClerico, Jr., U.S. District Judge]

---

Before

Boudin, Circuit Judge,
Bownes, Senior Circuit Judge,
and Stahl, Circuit Judge.

---

Curtis C. Pett, Attorney, with whom Bruce R. Ellisen, Attorney, and Loretta C. Argrett, Assistant Attorney General, were on brief for appellant.
Nancy H. Michels, with whom Michels & Michels, was on brief for appellees.

**STAHL, <u>Circuit Judge</u>**.  The Internal Revenue Service ("IRS") appeals a judgment holding that Wayne and Mary Cousins ("Debtors"), who had filed for bankruptcy protection under Chapter 12 of the Bankruptcy Code ("the Code"), were not liable after discharge for postpetition interest on prepetition, nondischargeable tax liabilities.  We reverse.

## I.

On November 14, 1990, Debtors filed a petition for bankruptcy protection under Chapter 12, which is available only to farmers.  On March 14, 1991, the IRS filed a Proof of Claim for $43,194.42 in assessed federal tax liabilities.  Debtors then filed with the bankruptcy court a Chapter 12 Plan, which provided for the payment of the government's unsecured priority claim, but did not provide for the payment of postpetition interest on the obligation.  The bankruptcy court confirmed the initial Plan and Debtors' subsequent First Modified Revised Chapter 12 Plan.  Each plan required "full payment in deferred cash payment of all claims entitled to priority under 11 U.S.C. § 507 including . . . the debt to the Internal Revenue Service in the amount of $43,194.42."  The IRS raised no

objection to the confirmation of either plan, and during the life of the plan, the trustee paid the IRS $43,195.00 in satisfaction of Debtors' prepetition tax liabilities. On January 31, 1997, the bankruptcy court discharged Debtors after full satisfaction of all plan payments.

The IRS subsequently demanded a payment from Debtors of $15,560.11 for interest that had accrued postpetition on the prepetition tax liability. In response, Debtors brought an adversarial proceeding, seeking a determination that they were not liable for postpetition interest on prepetition tax liabilities, fully paid pursuant to their Chapter 12 plan.

The bankruptcy court held that a Chapter 12 debtor is discharged from personal postdischarge liability for postpetition interest on a nondischargeable tax debt because this interest is not assertable as a claim against the bankruptcy estate under 11 U.S.C. § 1222. The IRS appealed, and the district court affirmed. Once again, the IRS appeals.

We review de novo the legal question presented by this appeal. See Prebor v. Collins (In re I Don't Trust), 143 F.3d 1, 3 (1st Cir. 1998); Thinking Machs. Corp. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.), 67 F.3d 1021, 1023 (1st Cir. 1995).

**II.**

-3-

When a debtor files for protection under Chapter 12, any actions against the debtor or his property are stayed. See 11 U.S.C. § 1201 (1994). The United States trustee appoints a trustee who manages the bankruptcy estate. See id. § 1202(b)(1). Creditors file claims with the trustee, but may not include in their filings claims for postpetition interest. See id. § 502(b)(2). The debtor then files a plan, see id. § 1221, which must "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507," id. § 1222(a)(2). Section 507(a)(8) renders the government an unsecured priority creditor for its tax liabilities. The bankruptcy court ultimately decides whether to confirm the debtor's plan. See id. § 1225. If it does so, it charges the trustee with "ensur[ing] that the debtor commences making timely payments required by [the] confirmed plan." Id. § 1202(b)(4). Once these payments are completed, the bankruptcy court discharges all debts provided for by the plan, except those specified by § 523(a) as nondischargeable, such as a tax liability, see § 523(a)(1)(A). The debtor remains personally responsible for any debt not discharged in bankruptcy. See Marvin E. Jacob & Jacqueline B. Stuart, The Search for Balance in Bankruptcy: Congress Debates Bankruptcy Overhaul as Consumer Bankruptcies Rise, 116 Banking L.J. 369, 377 (1999) ("[D]ebts

that are nondischargeable pass or ride through the bankruptcy unaffected and are a postbankruptcy liability of the former debtor.").

In Bruning v. United States, 376 U.S. 358 (1964), the Supreme Court addressed whether the government is entitled to recover from the debtor postpetition interest on a tax liability that was not discharged through bankruptcy. See id. at 358 (interpreting the superseded Bankruptcy Act of 1898). As the Third Circuit explained, in holding that the debtor remains personally responsible for postpetition accrued interest, the Bruning Court "distinguished between denial of post-petition interest against the bankruptcy estate on a nondischargeable debt and the accrual of interest on a nondischargeable debt during the pendency of the bankruptcy to be collected from the debtor after the bankruptcy proceeding is completed." Leeper v. Pennsylvania Higher Educ. Assistance Agency, 49 F.3d 98, 101 (3d Cir. 1995) (emphasis added). The Court reasoned that by categorizing postpetition interest as nondischargeable, Congress "intended personal liability to continue as to the interest on that debt as well as to its principal amount." Bruning, 376 U.S. at 360. Therefore, it held that postpetition interest on a nondischargeable tax claim "remains, after bankruptcy, a personal liability of the debtor." Id. at 363. Bruning thus

-5-

stands for the proposition that a debtor with tax liabilities in existence prior to seeking bankruptcy protection is liable after his debts are discharged for postpetition interest on this tax debt.

While Bruning addressed the issue under section 17 of the Federal Bankruptcy Act, ch. 541, § 17, 30 Stat. 544, 550 (1899), repealed by Bankruptcy Code, Pub. L. No. 95-598, 92 Stat. 2549 (1978), its holding is applicable to cases arising under § 523(a)(1)(A) of the Code. See, e.g., Ward v. Board of Equalization (In re Artisan Woodworkers), 204 F.3d 888, 891 (9th Cir. 2000) (noting that "§ 17 of the Bankruptcy Act and § 523(a)(1)(A) of the Bankruptcy Code are functionally equivalent"); Burns v. United States (In re Burns), 887 F.2d 1541, 1543 (11th Cir. 1989) (noting that "pre-Code interpretations are presumed to have survived the enactment of the Bankruptcy Code unless Congress has expressed an intention to change the interpretation of judicially created concepts in enacting the Code" and concluding that with regard to Bruning, "Congress did not intend to change the pre-Code law").

Debtors convinced the bankruptcy and district courts that, while the Bruning rule might apply to some chapters of the Code, it does not apply to Chapter 12. The Debtors argue that Congress wrote § 1222(a)(2) to escape Bruning's dictates. They

-6-

contend that "[i]f Congress had intended that unsecured priority claimholders were to receive [postpetition] interest, it would have added . . . 'present value' language to § 1222(a)(2)." This argument obscures the difference between a Chapter 12 debtor's responsibility to satisfy his plan during the pendency of the bankruptcy proceeding and his remaining personal postbankruptcy obligation. While it is true that § 1222's wording frees the estate from any obligation to pay postpetition interest, it does not speak to the debtor's personal obligation for such interest. When a debtor files for bankruptcy under Chapter 12, his assets and liabilities become part of the bankruptcy estate, which the trustee manages throughout the bankruptcy proceeding. The debtor must file a plan that will resolve his debts, which the Code explicitly states may not include "unmatured interest," 11 U.S.C. § 502(b)(2). Upon the debtor's satisfaction of those debts, the bankruptcy court discharges all of his outstanding dischargeable debts and the bankruptcy proceeding is over. See id. § 1228. The debtor remains personally liable, however, for any nondischargeable debts. See Jacob & Stuart, supra, at 377. Thus, § 1222(a)(2) only governs how debts must be paid to satisfy the Chapter 12 plan. When § 1222(a)(2), without the "present value" language, speaks of fully paying the debts, it means that prior to

debtor's release from bankruptcy, the estate must pay the full amount of his debts as they stood at the time of the petition, as opposed to the current amount plus postpetition interest. Section 1222 "do[es] not affect the exception of tax debts from discharge or a debtor's personal liability." In re Artisan Woodworkers, 204 F.3d at 892.

Debtors contend that because § 1222(a)(2) prohibits the inclusion of postpetition interest under the plan, Congress could not have intended for a debtor postdischarge personally to have to pay postpetition interest. But, "[i]n all situations where the Bruning rule is applicable, the bankruptcy plan cannot make allowances for post-petition interest; the interest merely accrues and is collectable against the debtor [as opposed to the estate] after the bankruptcy is completed." Leeper, 49 F.3d at 102. Moreover, Congress intended this scheme. See Hanna v. United States (In re Hanna), 872 F.2d 829, 831 (8th Cir. 1989) ("Taken together, sections 502 and 523 simply demonstrate Congress' intent to codify the general principle that applied under Bruning. Postpetition interest is disallowed against the bankruptcy estate under section 502. Priority tax claims remain nondischargeable for individual debtors.").

We turn to whether the postpetition interest on Debtors' tax liability survived § 1228(a) discharge. Debtors

note that § 1228(a) mandates that all debts under the plan must be paid in full before the debtor can be discharged. Proceeding from this premise, they argue that because nondischargeable tax debts must be satisfied before discharge is entered, neither the tax liability nor its interest can survive discharge, and Bruning is inapplicable. We have a different view.

The plain language of § 1228(a)(2) provides that discharge specifically does not apply to any debt listed in § 523(a). Section 523(a)(1)(A), in turn, unequivocally notes that "[a] discharge under section . . . 1228(a) . . . does not discharge an individual debtor from any debt" for a tax liability, irrespective of "whether or not a claim for such tax was filed or allowed." 11 U.S.C. § 523(a)(1)(A). In addition, Debtors' reading of the Code would render even the principal of a tax liability extinguished after the plan is completed if, for example, the claim for tax liability was not filed or allowed and therefore was not included in the Chapter 12 plan. This interpretation is untenable. See Bruning, 376 U.S. at 360 ("It is undisputed that . . . petitioner remained personally liable after his discharge for that part of the principal amount of the tax debt and pre-petition interest not satisfied out of the bankruptcy estate."). Tax liabilities survive the bankruptcy

proceeding's termination, and as <u>Bruning</u> held, so does the interest upon these liabilities.

Debtors also contend that allowing the IRS to pursue postpetition interest contradicts the purpose of Chapter 12, which is designed to aid a struggling family farmer to escape from under the thumb of debt. Undoubtedly, Congress intended that Chapter 12 aid debtor-farmers in their attempts to resolve their financial difficulties. <u>See</u> 132 Cong. Rec. S15074-05 (daily ed. Oct. 3, 1986) (statement of Sen. Thurmond) ("[Chapter 12] is meant to assist those farmers who have the true potential to reorganize and to allow them relief from heavy debt burden, and yet allow farmers to pay creditors what is reasonable under today's difficult economic situation."). But, Congress also has decided that "certain problems--<u>e.g.</u>, those of financing the government--override the value of giving the debtor a wholly fresh start." <u>Bruning</u>, 376 U.S. at 361; <u>see</u> <u>also</u> <u>In re Hanna</u>, 872 F.2d at 831 ("Congress attempted to balance the interests of the debtor, creditors and the government, and in the instance of taxes and interest on such, Congress has determined that the problems of financing the government override granting debtors a wholly fresh start."). We must respect Congress's judgment. <u>See</u> <u>Leeper</u>, 49 F.3d at 105 ("Congress . . . may choose to amend the statute with respect to the treatment of post-petition

-10-

interest [for student loans[1]].  But until and unless it does so, we see no basis for the courts to change the longstanding rule as to nondischargeability of post-petition interest.").

### III.

We **reverse** the judgment of the district court and **remand** the matter to the district court for entry of judgment in favor of the IRS.

---

[1]Debtors argue that because student loans do not have priority under 11 U.S.C. § 507, the application of Bruning to them does not support its application here.  We disagree.  The absence of student loans in § 507 merely means that such claims receive no priority under a bankruptcy plan.  That fact is irrelevant to whether the bankruptcy court can discharge a student loan's principal and interest.  Section 1328(a)(2) provides that discharge does not apply to "any debt of the kind specified in paragraph (5), (8), or (9) of section 523(a)." Section 523(a)(8) covers student loans.  Similarly, § 1228(a) provides that discharge does not apply to "any debt of the kind specified in section 523(a)."  This similarity indicates that student loans under § 1328(a) and tax liabilities under § 1228(a) receive identical treatment under Bruning.