**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: KURT CARL KIELISCH; In Re:
JEAN RENEE KIELISCH,
*Debtors.*

---

KURT CARL KIELISCH; JEAN RENEE
KIELISCH,
*Plaintiffs-Appellees,*

v.

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,
*Defendant-Appellant.*

UNITED STATES OF AMERICA,
*Amicus Curiae.*

No. 00-2187

In Re: DAVID RUFUS LAWRENCE;
ELIZABETH LAWRENCE,
*Debtors.*

---

DAVID RUFUS LAWRENCE; ELIZABETH
LAWRENCE,
*Plaintiffs-Appellees,*

v.

EDUCATIONAL CREDIT MANAGEMENT
CORPORATION,
*Defendant-Appellant.*

UNITED STATES OF AMERICA,
*Amicus Curiae.*

No. 00-2188

Appeals from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Raymond A. Jackson, District Judge;
Robert G. Doumar, Senior District Judge.
(CA-00-148-2, BK-91-26981-DHA, AP-99-2122, CA-00-401-2,
BK-93-22290-DHA, AP-99-2187)

Argued: May 7, 2001

Decided: July 26, 2001

Before WILKINSON, Chief Judge, and WILLIAMS and
MOTZ, Circuit Judges.

Reversed by published opinion. Judge Williams wrote the opinion, in
which Chief Judge Wilkinson and Judge Motz joined.

**COUNSEL**

**ARGUED:** Rand Lewis Gelber, Rockville, Maryland, for Appellant.
Mark Simon Davies, Appellate Staff, Civil Division, UNITED
STATES DEPARTMENT OF JUSTICE, Washington, D.C., for
Amicus Curiae. Tom Cain Smith, Jr., Virginia Beach, Virginia; James
Lawrence Pedigo, Jr., Norfolk, Virginia, for Appellees. **ON BRIEF:**
Stuart E. Schiffer, Acting Assistant Attorney General, Helen F.
Fahey, United States Attorney, Robert M. Loeb, Civil Division,
UNITED STATES DEPARTMENT OF JUSTICE, Washington,
D.C., for Amicus Curiae.

**OPINION**

WILLIAMS, Circuit Judge:

This consolidated appeal, which involves the cases of Kurt and
Jean Kielisch and David and Elizabeth Lawrence (collectively, the

Debtors), requires us to resolve whether their creditor, Educational Credit Management Corporation (ECMC), is precluded from applying Chapter 13 plan payments from the Debtors' bankruptcy estates to postpetition interest on their nondischargeable student loan debts. The bankruptcy courts in the Debtors' cases each held that ECMC violated 11 U.S.C.A. § 502(b)(2) (West 1993) by applying the Debtors' Chapter 13 plan payments to post-petition interest, and the district courts each affirmed. Because we conclude that creditors are not precluded from applying bankruptcy estate payments to accrued postpetition interest on nondischargeable student loan debts, we reverse.

I.

A. *The Kielisches*

On December 9, 1991, Kurt and Jean Kielisch submitted a Chapter 13 petition for relief pursuant to the United States Bankruptcy Code. On February 21, 1992, Great Lakes Higher Education Guaranty Corporation (Great Lakes) filed proofs of claim for the Kielisches' student loans, one in the amount of $10,743.15 for Kurt Kielisch and one in the amount of $12,204.42 for Jean Kielisch. The proofs of claim included only principal and prepetition interest. On March, 30, 1992, the Kielisches filed an amended Chapter 13 plan, replacing the December 1991 plan. The amended plan, which was confirmed on June 12, 1992, provided that "the accepted unsecured claims of Great Lakes Higher Education, in the amounts of $12,095.35 and $10,629.00, will be paid in full through the Trustee." (J.A. at 46.) Pursuant to the amended plan, the trustee paid Great Lakes $10,887.63 for Kurt Kielisch and $12,956.43 for Jean Kielisch, and on June 6, 1997, the bankruptcy court entered an order discharging the Kielisches.[1]

---

[1]The order of discharge, of course, did not encompass nondischargeable debts. When a debtor satisfies its payments under a confirmed plan, "the bankruptcy court discharges all debts provided for by the plan, except those specified by § 523(a) as nondischargeable," such as the Kielisches' student loan debts. *In re Cousins*, 209 F.3d 38, 40 (1st Cir. 2000). "The debtor remains personally responsible for any debt not discharged in bankruptcy." *Id.*

After the discharge, ECMC, the assignee of the Kielisches' student loans, pursued collection efforts against them. ECMC asserted that, notwithstanding the payments made under the amended plan and the discharge order, its claims were never fully paid because postpetition interest continued to accrue during the pendency of the Chapter 13 proceedings. ECMC also argued that it was proper to apply plan payments first to accrued postpetition interest before principal and that, as a result, the Kielisches still owed a substantial amount on their loans. The Kielisches, in response to ECMC's claims, filed a complaint in bankruptcy court to determine the dischargeability of their student loan debt and the proper application of plan payments to that debt.

After a hearing, the bankruptcy court held that although ECMC was entitled to postpetition interest on the nondischargeable student loans, it was improper to apply any of the plan payments to postpetition interest. Accordingly, the bankruptcy court required ECMC to recalculate and reapply the payments received by Great Lakes from the estate to determine what amount of postpetition interest on the loans, if any, remained unpaid. The bankruptcy court left it to the parties to determine the extent to which ECMC's claim has been satisfied.

On January 31, 2000, ECMC filed a notice of appeal to the district court. The district court, after reviewing the briefs and the record and without oral argument, affirmed the bankruptcy court's decision.

## B. *The Lawrences*

On May 4, 1993, David and Elizabeth Lawrence filed a Chapter 13 bankruptcy petition. Listed in their schedules was student loan debt consisting of two promissory notes. These notes were held by American Student Loan Assistance (ASLA) and Consumers Bank and were subsequently transferred to the guarantor, ECMC, which now holds the notes. In their Chapter 13 plan, which was confirmed July 13, 1993, the Lawrences provided for their student loans as follows:

> The debtors shall pay 100% of the following student loans inside their Chapter 13 Plan, as they are nondischargeable

in Chapter 7; American Student Loan Assistance = $2,851.00. Consumer's Bank = $2,818.00.

(J.A. at 187.) These amounts included only principal and prepetition interest. The Lawrences' Chapter 13 trustee thereafter began making payments to ASLA according to the plan.[2] The trustee paid the entire $2,851.00 to ASLA as provided in the plan and proof of claim, and, on October 16, 1998, the bankruptcy court discharged the Lawrences. The case was closed on October 23, 1998, but the bankruptcy court reopened the case on November 16, 1999, at the request of the Lawrences, to determine the dischargeability of their debt to ECMC as assignee of the ASLA and Consumers Bank notes.

After a hearing, the bankruptcy court held that although ECMC was entitled to recover from the Lawrences accrued post-petition interest on its claims, 11 U.S.C.A. § 502 barred it from applying payments made under the Chapter 13 plan to postpetition interest. The bankruptcy court left it to the parties to determine to what extent ECMC's claim had been satisfied, based upon the court's ruling. On March 27, 2000, ECMC appealed to the district court, which affirmed the bankruptcy court's decision. After ECMC appealed the orders relating to both the Kielisches and Lawrences, we consolidated both cases for appeal.[3]

II.

The sole issue on appeal is whether the lower courts properly determined that ECMC was precluded from applying the Debtors' Chapter 13 plan payments to post-petition interest on the Debtors' nondischargeable student loans. "We review the district court's decision by applying the same standard of review that it applied to the bankruptcy

---

[2]Because of an incorrect address, the trustee's payment to Consumers Bank was returned to the trustee, and the trustee made no further payments to Consumers Bank. It is undisputed that the Lawrences did not pay any portion of the Consumer's Bank debt. Thus, this case centers solely around the remaining debt on the ASLA loan.

[3]In addition to the briefing and argument we received from the parties, we also accepted an amicus curiae brief and heard argument from the United States. We thank the United States for its participation.

court's decision. That is, we review findings of fact for clear error and conclusions of law de novo." *In re Deutchman*, 192 F.3d 457, 459 (4th Cir. 1999) (internal citations omitted). Whether the application of plan payments to postpetition interest on nondischargeable student loans violates § 502 is a question of law that we review de novo.

We begin our analysis with a review of the relevant statutory provisions. "Under the Guaranteed Student Loan Program the federal government serves as guarantor of unsecured student loans and subsidizes interest payments on those loans." *Student Loan Mktg. Assoc. v. Riley*, 104 F.3d 397, 400 (D.C. Cir. 1997). Pursuant to 11 U.S.C.A. § 523(a)(8) (West 1993 & Supp. 2001), government-guaranteed student loans are nondischargeable in bankruptcy proceedings absent a showing of undue hardship.[4] Section 523(a)(8) provides,

---

[4]The Debtors did not request an undue hardship determination. Although § 523(a)(8) provides that undue hardship is an exception to the nondischargeability of student loan debt, the Bankruptcy Code does not define the term, nor does it set forth standards for its application. *See In re Rifino*, 245 F.3d 1083, 1087 (9th Cir. 2001) (stating that "undue hardship" is not defined in the Bankruptcy Code). Some courts, however, have held that a discharge based on undue hardship requires a debtor to show the following:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans.

*Id.* (quoting *In re Brunner*, 46 B.R. 752, 753 (Bank. S.D.N.Y. 1985)); *see also In re Hornsby*, 144 F.3d 433, 437 (6th Cir. 1998) (considering the same factors, along with the amount of debt, the rate of interest, and the debtor's claimed expenses and current standard of living). Because the Debtors did not seek to establish undue hardship in the proceedings below, we do not address whether the Debtors qualify for an undue hardship discharge based upon their reliance on ECMC's proofs of claim, which included only principal and prepetition interest, in planning their finances based upon the assumption that the principal on their student loan debts would be fully paid by their estates.

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt— . . . .

(8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents . . . .

11 U.S.C.A. § 523(a)(8). Thus, under § 523(a)(8), the Debtors "remain[ ] personally responsible" for their nondischargeable student loan debts, and those debts "pass or ride through the bankruptcy unaffected and are a postbankruptcy liability of the former debtor." *In re Cousins*, 209 F.3d 38, 40 (1st Cir. 2000) (internal quotation marks omitted).

Section 523(a)(8) "was enacted to prevent indebted college or graduate students from filing for bankruptcy immediately upon graduation, thereby absolving themselves of the obligation to repay their student loans." *In re Hornsby*, 144 F.3d 433, 436-37 (6th Cir. 1998). The nondischargeability of student loans originally applied only to Chapter 7 bankruptcies and not Chapter 13 bankruptcies. This provided debtors seeking to discharge student loan debt an incentive to file Chapter 13 plans because courts permitted borrowers to discharge their student loan debts under Chapter 13 without a showing of undue hardship. *See In re Klein*, 57 B.R. 818, 820 (9th Cir. B.A.P. 1985) (permitting discharge of student loan under Chapter 13 because "a reasonable construction of the statute requires reading Chapter 13 discharge provisions separately from Chapter 7 and that Congress intended student loans to be dischargeable under Chapter 13" (internal citations omitted)). In 1990, Congress responded by extending the nondischargeability of student loans to Chapter 13 filings. *See In re Andersen*, 179 F.3d 1253, 1260 n.12 (10th Cir. 1999) (stating that "prior to 1990, student loan obligations were dischargeable in chapter

13 after completion of plan payments" but that "[i]n 1990, Congress amended § 1328(a)(2), adding § 523(a)(8) as an exception to discharge" (citing Student Loan Default Prevention Initiative Act of 1990, Pub. L. 101-508, §§ 3001, 3007, 104 Stat. 1388, 1388-25, 1388-28 (1990)).

Section 682.404(f) of Title 34 of the Code of Federal Regulations addresses the manner in which a creditor must apply payments from a student loan debtor such as the Debtors; it provides,

> (f) Application of borrower payments. A payment made to a guaranty agency by a borrower on a defaulted loan must be applied first to the collection costs incurred to collect that amount and then to other incidental charges, such as late charges, then to accrued interest and then to principal.

34 C.F.R. § 682.404(f) (2000). Based on 11 U.S.C.A. § 523(a)(8) and 34 C.F.R. § 682.404(f), Congress has determined that absent proven undue hardship, student loans are nondischargeable and, thus, pass unaffected through the bankruptcy estate for purposes of the debtor's liability, and Congress has approved that the creditor, in applying a debtor's defaulted student loan payments, generally must apply those payments first to accrued interest before principal. This, of course, is how ECMC treated the Debtors' student loans; it deemed that the Debtors' student loan debts were unaffected by their bankruptcies, and it applied the payments from their bankruptcy estates to postpetition interest before principal. The question, then, is whether Congress intended another provision, § 502, to preclude ECMC from treating the Debtors in the same manner, with respect to their nondischargeable student loan debts, as it does other debtors who have not declared bankruptcy.

Section 502 provides,

> (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and *shall allow such claim* in such amount, *except to the extent that—*

(2) *such claim is for unmatured interest . . . .*

11 U.S.C.A. § 502(b)(2) (emphasis added). It is undisputed, based on § 502, that ECMC could file claims with the Debtors' estates only for prepetition interest and principal and not for unmatured, postpetition interest. The purpose of this provision is to protect other creditors, as well as to avoid administrative inconvenience, by ensuring that it is "possible to calculate the amount of claims easily and . . . that creditors at the bottom rungs of the priority ladder are not prejudiced by the delays inherent in liquidation and distribution of the estate." *In re Hanna*, 872 F.2d 829, 830 (8th Cir. 1989). Section 502 does not "freeze" the debt of the student loan debtor; interest continues to accrue during the pendency of the bankruptcy proceedings and, as noted above, the debtor remains personally liable for the full amount of the student loan debt. *See Cousins*, 209 F.3d at 40.

### A.

The lower courts in each case reasoned that although the Debtors' postpetition interest remained nondischargeable and could be recovered from the debtors *personally* upon completion of the Chapter 13 plans, ECMC could not apply payments to postpetition interest from the bankruptcy estates because § 502 prohibits the application of bankruptcy estate funds to unmatured, postpetition interest.[5] In other

---

[5]Although the district courts in both cases each imply that unmatured interest can never be paid from the bankruptcy estate, it is well-established that § 502 does not prohibit the application of bankruptcy estate funds to unmatured interest in all circumstances:

> For example, if a creditor is oversecured — the value of his security is sufficient not only to satisfy the principal amount of the claim, but also to satisfy postpetition interest, then such interest is "allowed." Postpetition interest is also payable out of the assets of the bankruptcy estate — if the debtor ultimately proves to be solvent — before any sums are returned to the debtor.

*In re Hanna*, 872 F.2d 829, 830-31 (8th Cir. 1989) (internal citations omitted); *see also In re Pardee*, 218 B.R. 916, 921 n.6 (9th Cir. B.A.P. 1998) (similar), *aff'd*, 193 F.3d 1083 (9th Cir. 1999). This supports the proposition that the goal of § 502 is the protection of other creditors, not debtors.

words, these courts concluded that because § 502 barred ECMC from *claiming* postpetition interest from the bankruptcy estates, it also barred ECMC from applying the estates' payments to postpetition interest.

The lower courts and the Debtors rely on *Bruning v. United States*, 376 U.S. 358 (1964), and *Leeper v. Pennsylvania Higher Educ. Assistance Agency*, 49 F.3d 98, 100-01 (3d Cir. 1995), for the proposition that "under § 502(b) [postpetition] interest cannot be . . . recovered from the bankruptcy estate." *Lawrence v. Educ. Credit Mgmt. Corp.*, 251 B.R. 467, 471 (E.D. Va. 2000); *see also In re Pardee*, 218 B.R. 916, 922 (9th Cir. B.A.P. 1998) (stating that § 502 "precludes the payment of postpetition interest from the bankruptcy estate"); *In re Wagner*, 200 B.R. 160, 163 (Bank. N.D. Ohio 1996) (same).

In *Bruning*, the Supreme Court addressed "whether the United States is entitled to recover, out of assets acquired by a debtor after his adjudication of bankruptcy, post-petition interest on a tax assessment which (under § 17 of the Federal Bankruptcy Act, 30 Stat. 544, 550, as amended, 11 U.S.C. § 35) was not discharged in the bankruptcy proceedings." *Bruning*, 376 U.S. at 358. The Court stated that

> Initially, one would assume that Congress, in providing that a certain type of debt should survive bankruptcy proceedings as a personal liability of the debtor, intended personal liability to continue as to the interest on that debt as well as to its principal amount. Thus, it has never been seriously suggested that a creditor whose claim is not provable against the trustee in bankruptcy loses his right to interest in a postbankruptcy action brought against the debtor personally. In most situations, interest is considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing debt. Interest on a tax debt would seem to fit that description. Thus, logic and reason indicate that post-petition interest on a tax claim excepted from discharge by § 17 of the Act should be recoverable in a later action against the debtor personally, and there is no evidence of any congressional intent to the contrary.

*Id.* at 360. The Court also stated,

> We find no indication in the wording or history of § 6873(a) that the section was meant to limit the Government's right to continuing interest on an undischarged and unpaid tax liability. Nor is petitioner aided by the now-familiar principle that one main purpose of the Bankruptcy Act is to let the honest debtor begin his financial life anew. As the Court of Appeals noted, § 17 is not a compassionate section for debtors. Rather, it demonstrates congressional judgment that certain problems — e.g., those of financing government — override the value of giving the debtor a wholly fresh start. Congress clearly intended that personal liability for unpaid tax debts survive bankruptcy. The general humanitarian purpose of the Bankruptcy Act provides no reason to believe that Congress had a different intention with regard to personal liability for the interest on such debts.

*Id.* at 361 (internal footnote omitted).

The Debtors argue that *Bruning* clearly distinguishes between personal liability and liability of the estate for purposes of postpetition interest on nondischargeable debts and, therefore, that *Bruning* supports their argument that ECMC cannot apply estate payments to postpetition interest even though they remain personally liable for the postpetition interest. *Bruning*, however, only addressed whether Bruning could be personally liable for postpetition interest that was not paid out of the estate; it did not address the propriety of applying estate payments to postpetition interest.

In *Leeper*, the Third Circuit concluded that *Bruning* applied to the Chapter 13 context and that postpetition interest did accrue on nondischargeable student loan debt during the pendency of Chapter 13 proceedings. *Leeper*, 49 F.3d at 104. *Leeper*, however, addressed only whether postpetiton interest could accrue on a nondischargeable student loan after the filing of a Chapter 13 bankruptcy petition and not whether the creditor could apply estate payments to postpetition interest. Moreover, the *Leeper* court explicitly recognized that the creditor did not argue that plan payments made by the debtors could be applied beyond its bankruptcy claims, which only included outstand-

ing principal and prepetition interest. *Id.* at 100 (noting that in its answer, the creditor "conceded that all plan payments made by the debtors should be applied only to their bankruptcy claims, which include the outstanding principal balances of the loans and all pre-petition interest"). Thus, *Leeper* did not address the issue before us, which is whether § 502 prohibits the application of estate payments to postpetition interest on nondischargeable student loan debt that was not included in the bankruptcy claims, but for which the Debtors remain personally liable.

B.

Section 502 bars creditors from making *claims* from the bank-ruptcy estate for unmatured interest; it is undisputed, therefore, that ECMC could not have included the Debtors' postpetition interest in its proofs of claim to their bankruptcy estates. Section 101(5) of the bankruptcy code defines a "claim" as follows:

> (5) "claim" means—
>
> > (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> >
> > (B) right to an equitable remedy for breach of per-formance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured . . . .

11 U.S.C.A. § 101(5) (West 1993 & Supp. 2001). Notably, however, a "claim" is defined differently under the Bankruptcy Code than a "debt," which is "liability on a claim." 11 U.S.C.A. § 101(12). Thus, although § 502 limits ECMC's ability to file "claims" for postpetition interest with the Debtors' bankruptcy estates, it does not purport to limit the *liability* on those claims, i.e., "debts."

We believe that the lower courts conflated these two concepts by effectively treating a "claim" as the equivalent of a "debt" for purposes of § 502 such that, under the lower courts' reasoning, ECMC's inability to file a proof of claim for postpetition interest also rendered ECMC unable to apply estate payments to debts that included postpetition interest. Section 502, however, does not mention "debts," nor does it address how a creditor may apply payments that it receives from the estate; it simply addresses which claims are allowed from a debtor's estate, without speaking to ECMC's ability to use the estate payments to pay off the postpetition interest on the Debtors' nondischargeable debts. Section 502, in other words, does not provide a basis for departing to any extent from § 523(a)(8)'s mandate that student loan debts are nondischargeable, nor does it demonstrate that ECMC may not apply the Debtors' payments first to postpetition interest before principal, as required by 34 C.F.R. § 682.404(f).

We believe that adopting the Debtors' position would, in essence, permit them partially to discharge the interest on their nondischargeable student loan debts without a showing of undue hardship, as required by § 523(a)(8), because allowing their estates to pay off loan principal without first permitting the application of the payment by the estate to satisfy postpetition interest would reduce the overall amount that the Debtors would have to pay as a result of their debts and would also prevent the accumulation of interest that would have accrued but for their bankruptcies. This would place the Debtors in a far more favorable position than other student loan debtors solely by virtue of their Chapter 13 bankruptcies, thus allowing the Debtors to accomplish indirectly what they could not accomplish directly under the plain language of § 523(a)(8), i.e., a partial discharge of the interest on their student loan debts without a showing of undue hardship.[6]

---

[6]The lower courts, although not directly saying so, appear to have assumed that the Debtors' student loan debts are subject only to simple interest, which is calculated only on the outstanding principal balance and not on the unpaid postpetition interest. (*See* J.A. at 163 (bankruptcy court opinion in Kielisch case, stating that ECMC is "entitled to accrued interest *on unpaid principal*, at the contract rate of 9% per annum" (emphasis added)); *Lawrence v. Educ. Credit Management Corp.*, 251 B.R. 467, 471-72 (E.D. Va. 2000) ("Postpetition interest would continue to accrue *on the diminishing principal balance* as Debtors made their

Because § 523(a)(8) explicitly precludes the discharge of the Debtors' student loan debts absent a showing of undue hardship, because § 502 does not address ECMC's ability to apply estate payments to postpetition interest debts, and because ECMC's application of payments is consistent with the standard accounting practices set forth in 34 C.F.R. § 682.404(f), we cannot agree that ECMC was barred from applying the Debtor's estate payments to postpetition interest on their student loans.

Our conclusion is bolstered by the fact that the Court in *Bruning* recognized that "the basic reasons for the rule denying post-petition

---

payments according to the Chapter 13 plan." (emphasis added)); *see also* J.A. at 192 (promissory note for Lawrences, describing the Lawrences' agreement to "pay an amount equivalent to simple interest on the unpaid principal balance" but noting that "[t]he lender or other holder of the note may add accrued unpaid interest to the unpaid principal balance (capitalization) of th[e] loan in accordance with the policies of MHEAC").) We note that if, as amicus urges, capitalization of accruing unpaid interest applies rather than simple interest, interest would compound upon interest and not just upon outstanding principal. Under such circumstances, we are not aware that ECMC's method of applying estate payments would make any difference as to the Debtors' overall remaining debts because, regardless of whether estate payments are applied first to postpetition interest or solely to principal, interest would continue to accrue at the same rate on the outstanding debt, and, in the end, the Debtors would owe the same amount. If so, then the issue before us would be one of mere labeling because, regardless of how ECMC applies the estate payments, the Debtors would still have the same outstanding debt. We believe that it is likely that compound interest applies and, therefore, it is unlikely that ECMC's method of applying estate payments would make any difference in calculating the amount of the Debtor's outstanding student loan debts. *Cf.* 34 C.F.R. § 682.202(b)(2)(iv) (2000) (providing that a lender may capitalize interest that has accrued during a period of authorized forbearance). However, in light of our conclusion that ECMC may apply estate payments to postpetition interest, and in light of the fact that the parties have not briefed the issue or disputed the lower courts' assumption that simple interest applies, we will proceed with our analysis under the assumption, but without deciding, that the lower courts were correct that simple interest applies to the Debtors' student loan obligations.

interest as a claim against the bankruptcy estate are the avoidance of unfairness as between competing creditors and the avoidance of administrative inconvenience" and that "[t]hese reasons are inapplicable to an action brought against the debtor personally." *Id.* at 362-63. The Court stated that "[i]n [*Bruning*], collection of postpetition interest cannot inconvenience administration of the bankruptcy estate, cannot delay payment from the estate unduly, and cannot diminish the estate in favor of high interest creditors at the expense of other creditors." *Id.* at 363. Thus, the Court found "the reasons — and thus the rule — inapplicable," and held "that post-petition interest on an unpaid tax debt not discharged by § 17 remains, after bankruptcy, a personal liability of the debtor." *Id.*

Here, as in *Bruning*, the "reasons — and thus the rule" are inapplicable to ECMC's application of estate payments to postpetition interest. No matter how long the proceedings take, ECMC still receives only the amount that it sought in its proofs of claim for principal and prepetition interest, even if that amount is later applied to postpetition interest; because the amount claimed from the estate remains the same no matter how ECMC applies the payments, ECMC's method of application simply has no effect on the rights of other creditors. Because the purpose of § 502 is to ensure the fair allocation of assets between creditors, we fail to see how the manner in which ECMC applies estate payments, once allocated, creates any unfairness to other creditors or complicates the administration of the bankruptcy estate so as to implicate the policies underlying § 502 that were articulated by the Court in *Bruning*. *Cf. Hanna*, 872 F.2d at 830-31 (8th Cir. 1989) (stating, in Chapter 7 context, that the general rule "'disallowing' the payment of postpetition interest out of the bankruptcy estate is a rule of administrative convenience and fairness to all creditors," and "when concerns for administrative convenience and fairness are not present, postpetition interest will be 'allowed'").[7] We therefore

---

[7] We recognize that the Tenth Circuit has stated that "[s]ection 502(b) does not simply prohibit certain creditors from filing a proof of claim for post-petition interest; it prohibits those creditors from collecting the interest from the bankruptcy estate." *United States v. Victor*, 121 F.3d 1383, 1387 (10th Cir. 1997). Likewise, the Eighth Circuit, in *In re Hanna*, 872 F.2d 829 (8th Cir. 1989), has referred to § 502 as setting forth a "general rule 'disallowing' the payment of unmatured interest out

conclude that § 502 does not prohibit ECMC from applying the Debtors' estate payments to the postpetition interest on their student loan debts.

### III.

In conclusion, 11 U.S.C.A. §§ 523(a)(8) and 502 provide that absent a finding of undue hardship, student loan debt is nondischargeable and that a creditor in ECMC's position may file its claim with the bankruptcy estate only for prepetition interest and principal balance. Further, under 34 C.F.R. § 682.404(f), a creditor generally must apply student loan payments first to payment of interest before loan principal. Because § 502 only addresses ECMC's ability to file proofs of claim for postpetition interest and not its ability to apply estate payments to accrued interest (including postpetition interest) once those claims are paid by the estate, § 502 does not provide a basis for concluding that ECMC may not apply the Debtors' estate payments to the postpetition interest on their nondischargeable student loan debts.

*REVERSED*

---

of the assets of the bankruptcy estate." *Id.* at 830. We note, however, that both of these cases simply assume, with little analysis, that § 502's prohibition on the allowance of claims for postpetition interest from the estate also bars the application of estate payments to postpetition interest. As discussed above, we do not read § 502 as addressing the creditor's ability to apply estate payments to postpetition interest.