**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 29 2002**

**PATRICK FISHER**
**Clerk**

PUBLISH

## UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

---

In re: JOHN MARSHALL TUTTLE;
LEONA JULIA TUTTLE,

    Debtors,

-----------------------------------------------.

LEONA JULIA TUTTLE,

    Appellant,

v.

UNITED STATES OF AMERICA,

    Appellee.

No. 01-3129

---

**APPEAL FROM THE UNITED STATES BANKRUPTCY APPELLATE PANEL
FOR THE TENTH CIRCUIT
(No. KS-00-074)**

---

Todd A. Luckman (Gary H. Hanson and Wesley F. Smith with him on the brief), Stumbo, Hanson & Hendricks, LLP, Topeka, Kansas, for the appellant.

Curtis C. Pett, Attorney, Tax Division, Department of Justice (Eileen J. O'Connor, Assistant Attorney General; Bruce R. Ellisen, Attorney, Tax Division, Department of Justice; and James E. Flory, United States Attorney, with him on the brief), Washington, D.C., for the appellee.

---

Before **TACHA**, Chief Judge, **HENRY**, and **BRISCOE**, Circuit Judges.

---

**BRISCOE**, Circuit Judge.

Leona Tuttle, debtor in a Chapter 11 bankruptcy case, appeals from a decision of the Bankruptcy Appellate Panel (BAP) holding that, even after confirmation and successful completion of her Chapter 11 plan, she remains personally liable for "gap interest," i.e., interest that accrued between the date her petition was filed and the date her plan was confirmed, on a nondischargeable tax debt to the Internal Revenue Service (IRS). We exercise jurisdiction pursuant to 28 U.S.C. § 158(d) and affirm.

I.

Tuttle and her husband filed a Chapter 11 bankruptcy petition in April 1993. The IRS filed an amended claim for $53,997.35. Of this amount, $40,519.17 was for a priority claim, and $13,478.18 represented a general unsecured claim. Tuttle's Chapter 11 reorganization plan was confirmed by the bankruptcy court in December 1999. Tuttle paid the total amount of the IRS claim pursuant to her reorganization plan. However, the IRS subsequently sought to recover, from her personally, gap interest totaling approximately $30,000 that accrued on its priority tax claim between the time she filed her bankruptcy petition and the time her plan was confirmed.[1]

---

[1] The bankruptcy court found, and the parties do not dispute, that "[n]either the debtor's counsel nor counsel appearing for the IRS before the plan was confirmed realized that the IRS had been accruing interest against the debtor on the priority portion of the debt for the six years between the time the debtors filed for bankruptcy and Mrs. Tuttle's plan was confirmed." App. at 89.

2

Tuttle filed a motion with the bankruptcy court to enforce the discharge she received on confirmation of her plan and to prohibit the IRS from collecting the gap interest. The bankruptcy court denied Tuttle's motion, "reluctantly" concluding, based on Tenth Circuit precedent, "that gap interest on the IRS's priority claim was not discharged by confirmation of the debtor's plan" and that the IRS was "not estopped from trying to collect the interest." App. at 98. In reaching this conclusion, the bankruptcy court emphasized that, absent existing Tenth Circuit precedent, it would have ruled in favor of Tuttle. On appeal, the BAP agreed with the bankruptcy court that, under Tenth Circuit precedent, "the gap interest owed to the IRS [wa]s not dischargeable, but rather" Tuttle "remain[ed] personally liable for the gap interest." Id. at 165.

II.

"In our review of BAP decisions, we independently review the bankruptcy court decision." In re Albrecht, 233 F.3d 1258, 1260 (10th Cir. 2000). Where, as here, "[t]here are no factual disputes and the issues on appeal pertain to the proper application of bankruptcy statutes and the interpretation of case law," our review is de novo. Id.

Tuttle contends the BAP and the bankruptcy court erred in concluding that gap interest was not discharged upon confirmation of her Chapter 11 plan and that she remains personally liable for the gap interest. Although Tuttle concedes that the BAP and the bankruptcy court followed Tenth Circuit precedent, she contends that precedent "should be rejected" either as dicta or "as inconsistent with the intent of the Bankruptcy

3

Code." Aplt. Br. at 5. In Tuttle's view, gap interest in a Chapter 11 proceeding "is an integral part of a priority tax claim, and if the allowed claim is paid in full under a plan, the gap interest should be considered paid as well." Id. at 6.

In addressing Tuttle's arguments, we begin by reviewing how IRS claims for unpaid taxes are treated in Chapter 11 bankruptcy proceedings. Like other creditors, the IRS has the right to file a claim in a Chapter 11 bankruptcy proceeding to seek repayment of unpaid taxes. "If the IRS has a[n unsecured] claim for taxes for which the return was due within three years before the bankruptcy petition was filed, the claim enjoys eighth priority under [11 U.S.C.] § 507(a)(8)(A)(i) and is nondischargeable in bankruptcy under § 523(a)(1)(A)." Young v. United States, 122 S. Ct. 1036, 1039 (2002); see also 11 U.S.C. § 1141(d)(2) (providing that confirmation of a Chapter 11 plan "does not discharge an individual debtor from" liability for priority tax claims). As part of its claim against the bankruptcy estate, the IRS may also seek pre-petition interest and penalties. E.g., In re Bates, 974 F.2d 1234, 1237 (10th Cir. 1992) ("Pre-petition interest has the same priority as the underlying tax providing the interest accrued pre-petition."). Depending on the terms of a confirmed Chapter 11 plan, the IRS may also receive post-confirmation interest on its priority tax claims. See 11 U.S.C. § 1129(a)(9)(C).

At issue here is whether the IRS may also collect post-petition, pre-confirmation interest (i.e., gap interest) on the IRS's priority tax claims. Like other creditors in bankruptcy proceedings, the IRS is generally precluded from including unmatured interest

4

as part of its claim. Specifically, § 502(b)(2) of the Bankruptcy Code provides that unmatured interest cannot be allowed as a claim against the bankruptcy estate. 11 U.S.C. § 502(b)(2). The purpose of this rule is to "ensure[] convenient administration of cases and equity in distribution." United States v. Victor, 121 F.3d 1383, 1386 (10th Cir. 1997). More specifically, "[t]he rule makes it possible to calculate the amount of claims easily and assures that creditors at the bottom rungs of the priority ladder are not prejudiced by the delays inherent in liquidation and distribution of the estate." In re Hanna, 872 F.2d 829, 830 (8th Cir. 1989). "Therefore, post-petition[, pre-confirmation] interest [generally] cannot be included in a Chapter 11 plan."[2] Stacy v. United States, 249 B.R. 683, 685 (Bankr. W.D. Va. 2000).

The IRS asserts that, because priority tax claims are nondischargeable in Chapter 11 proceedings, the debtor remains personally responsible for accruing gap interest. In support of its assertion, the IRS points to Bruning v. United States, 376 U.S. 358 (1964), a pre-Bankruptcy Code case, as well as various decisions applying Bruning to cases governed by the Bankruptcy Code.

In Bruning, the Supreme Court interpreted the provisions of the Bankruptcy Act of 1898 and held that, following discharge in bankruptcy, a debtor remained personally

---

[2] In Victor, we concluded that secured creditors, including the IRS, may seek payment of post-petition interest as part of the Chapter 11 plan if the value of the collateral exceeds the value of their claim. 121 F.3d at 1387. That rule does not apply here, however, since it is uncontroverted that the IRS claim was unsecured.

liable for post-petition interest that accrued on an unpaid, nondischargeable tax debt. In reaching this conclusion, the Court began by noting that § 17 of the Act provided that a debtor "remained personally liable after his discharge for that part of the principal amount of the tax debt and prepetition interest not satisfied out of the bankruptcy estate." Id. at 360. The Court then assumed, based upon the general rule set forth in § 17, that Congress also "intended personal liability to continue as to the interest on that debt as well as to its principal amount." Id. In particular, the Court noted that "[i]n most situations, interest [wa]s considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing debt." Id. The Court rejected the notion that a debtor faced with post-petition interest on a tax debt was "aided by the now-familiar principle that one main purpose of the Bankruptcy Act is to let the honest debtor begin his financial life anew." Id. at 361. In fact, the Court noted, "§ 17 [wa]s not a compassionate section for debtors," but instead "demonstrate[d] congressional judgment that certain problems–e.g., those of financing government–overr[o]de the value of giving the debtor a wholly fresh start." Id. Finally, the Court rejected the debtor's assertion that "the traditional rule which denie[d] post-petition interest as a claim against the bankruptcy estate also applie[d] to discharge the debtor from personal liability for such interest." Id. at 362. According to the Court, the basic reasons for the rule denying post-petition interest as a claim against the bankruptcy estate (i.e., avoidance of unfairness as between competing creditors and the avoidance of

6

administrative inconvenience) were "inapplicable to an action brought against the debtor personally." Id. at 363.

Although the parties dispute whether the provisions of the Bankruptcy Code, in particular the unique provisions of Chapter 11, mandate a different result than reached in Bruning, they agree that this court has adopted the Bruning rationale in two Chapter 11 cases: Victor, 121 F.3d at 1387 (holding, in Chapter 11 case involving secured claim asserted by the IRS, that "interest that accrues on a nondischargeable tax debt is an integral part of an underlying tax claim and is generally treated the same as the original claim"), and In re Fullmer, 962 F.2d 1463, 1468 (10th Cir. 1992) (holding, in context of Chapter 11 proceeding, that "[i]nterest that accrues postpetition on a nondischargeable prepetition tax debt survives bankruptcy as a personal liability"), abrogated on other grounds, Raleigh v. Illinois Dept. of Revenue, 530 U.S. 15 (2000).[3]

Tuttle suggests that the critical statements in Victor and Fullmer constitute dicta and therefore are not binding on the panel in this case. See Bates v. Dep't of Corrections, 81 F.3d 1008, 1011 (10th Cir. 1996) (holding that "a panel of this Court is bound by a holding of a prior panel" but "is not bound by a prior panel's dicta"). In Rohrbaugh v.

---

[3] In In re Grynberg, 986 F.2d 367, 371 (10th Cir. 1993), we also held, consistent with the holding in Bruning, that the IRS could pursue a claim for unpaid taxes against the debtor personally despite confirmation and consummation of a Chapter 11 plan. In reaching this conclusion, we stated: "'[I]t is apparent to us that Congress has made the choice between collection of revenue and rehabilitation of the debtor by making it extremely difficult for a debtor to avoid payment of taxes under the Bankruptcy Code.'" Id. (quoting United States v. Gurwitch, 794 F.2d 584, 585-86 (11th Cir. 1986)).

Celotex Corp., we explained that dicta are "'statements and comments in an opinion concerning some rule of law or legal proposition not necessarily involved nor essential to determination of the case at hand.'" 53 F.3d 1181, 1184 (10th Cir. 1995) (quoting Black's Law Dictionary 454 (6th ed. 1990)).

It is a close question whether the critical statement in Victor can be considered dicta. The court in Victor was dealing with an oversecured tax claim asserted by the IRS (as opposed to the unsecured claim asserted here) and was specifically asked to determine whether the IRS's failure to seek gap interest as part of its claim resulted in the gap interest being discharged upon plan confirmation. The IRS argued that the gap interest was not discharged because, it theorized, the interest was part of a nondischargeable tax debt that survived bankruptcy. The court rejected the IRS's arguments:

> Admittedly, interest that accrues on a nondischargeable tax debt is an integral part of an underlying tax claim and is generally treated the same as the original claim. But here, that proposition lacks force unless the IRS's secured claim qualifies as a nondischargeable debt under the relevant sections of the Bankruptcy Code. We conclude that it does not.

121 F.3d at 1387 (internal citation omitted). Arguably, the opening sentence was not "essential to determination" of the issue before the court, and indeed the court could have assumed, without explicitly stating, that "interest that accrues on a nondischargeable tax debt is an integral part of an underlying claim." Accordingly, the opening sentence, which references the issue presented here, more closely resembles dicta than a holding.

A much closer question is whether the key statement in Fullmer was dicta. In

8

Fullmer, the debtor filed a Chapter 11 proceeding and the IRS filed an unsecured claim for unpaid taxes. After the debtor's plan was confirmed, the debtor made two large payments to the IRS, part of which was applied by the IRS to gap interest that had accrued on the unpaid taxes. The debtor objected to the IRS's action, contending the IRS improperly exacted payment for the gap interest from the bankruptcy estate. This court disagreed:

> We do not dispute the contention that unmatured interest, including interest accruing postpetition on a prepetition tax debt, is disallowed against the bankruptcy estate pursuant to 11 U.S.C. § 502(b)(2). However, [the debtor] paid the IRS the [money] after his plan was confirmed. Thus, the payment was made by him personally and not by the bankruptcy estate. Interest that accrues postpetition on a nondischargeable prepetition tax debt survives bankruptcy as a personal liability. Because [the debtor] remained personally liable for . . . the postpetition interest . . . that accrued on his prepetition debt, the IRS was entitled to apply a portion of his personal payment to th[is] debt[].

962 F.2d at 1467-68 (internal footnote and citations omitted). Although the court perhaps could have grounded its decision solely on the basis that the payment to the IRS was made by the debtor personally rather than by the estate, the quoted language indicates that the court also grounded its decision on Bruning and the notion that gap interest "survives bankruptcy as a personal liability." Thus, it appears that the court's statement in this regard was "essential to its decision" and therefore not dicta. The decision is binding on this panel even though, as pointed out by Tuttle, the court in Fullmer did not consider or address all of the arguments now asserted by Tuttle against applying Bruning to Chapter 11 cases.

Even assuming, for purposes of argument, that neither Victor nor Fullmer controls, the great weight of authority clearly supports applying Bruning to cases brought under the Bankruptcy Code, including Chapter 11 cases. Although a few bankruptcy courts have held Bruning inapplicable to Bankruptcy Code cases, those decisions subsequently were reversed. E.g., In re Heisson, 192 B.R. 294, 296 (Bankr. D. Mass. 1996) (Chapter 11 proceedings), rev'd, 217 B.R. 1 (D. Mass. 1997); In re Reich, 66 B.R. 554, 557-58 (Bankr. D. Colo. 1986) (Chapter 7 proceedings), rev'd, 107 B.R. 299 (D. Colo. 1989); In re Frost, 19 B.R. 804, 810 (Bankr. D. Kan. 1982) (concluding in Chapter 13 proceeding that "fresh start" policy of Bankruptcy Code undermined rationale of Bruning), vacated on relevant ground as unripe, 47 B.R. 961 (D. Kan. 1985). Moreover, literally all of the circuit courts to consider the issue have concluded that Bruning applies to Bankruptcy Code proceedings. E.g., In re Cousins, 209 F.3d 38, 41 (1st Cir. 2000) (Chapter 12 proceedings); In re Artisan Woodworkers, 204 F.3d 888, 891-92 (9th Cir. 2000) (Chapters 11 and 12 proceedings); In re Johnson, 146 F.3d 252, 260 (5th Cir. 1998) (Chapter 7 proceedings); In re Burns, 887 F.2d 1541, 1543 (11th Cir. 1989) (Chapter 7 proceedings); Hanna, 872 F.2d at 830-31 (Chapter 7 proceedings); see also Leeper v. Pennsylvania Higher Educ. Assistance Agency, 49 F.3d 98, 104 (3d Cir. 1995) (Chapter 13 proceedings involving question of post-petition interest on nondischargeable student loan).

Notwithstanding this weight of authority, Tuttle suggests there are various policy

reasons why Bruning should not be applied to Chapter 11 cases such as hers.[4]  Most notably, Tuttle argues that allowing the IRS to recover gap interest from a debtor who received a discharge in a Chapter 11 proceeding inevitably will undermine the debtor's ability to successfully complete the confirmed plan.  As noted by Tuttle, because such debtors generally have few assets with which to repay their confirmed plans, and because gap interest is not taken into account in such plans, most debtors will be unable to pay both the gap interest to the IRS and fulfill their remaining obligations under the plan.

While Tuttle's policy arguments are not without merit, they cannot overcome the plain language of the Bankruptcy Code.  As noted, § 1141(d)(2) specifically provides that confirmation of a Chapter 11 plan does not discharge a debtor from any debt listed in § 523.  "Section 523(a)(1)(A), in turn, unequivocally notes that '[a] discharge under section . . . [1141] . . . does not discharge an individual debtor from any debt' for a tax liability, irrespective of 'whether or not a claim for such tax was filed or allowed.'" Cousins, 209 F.3d at 42 (quoting § 523(a)(1)(A)).  In light of these provisions, "[t]ax liabilities survive the bankruptcy proceeding's termination, and as Bruning held, so does the interest upon these liabilities."  Id.  Therefore, it appears that the policy arguments

---

[4]  Although Tuttle attempts to lump Chapter 11 and Chapter 13 proceedings together, suggesting that all "reorganization cases" are significantly different than Chapter 7 cases, the fact is that the Bankruptcy Code treats Chapter 11 cases differently from Chapter 13 cases, at least in one important respect.  In a Chapter 13 case, successful completion of a reorganization plan results in the debtor's discharge of liability from accrued IRS claims.  In contrast, Chapter 11 specifically provides that such claims survive the debtor's discharge in bankruptcy and remain valid against an individual debtor.

11

raised by Tuttle must be addressed, if at all, by Congress.[5] See id. (concluding that "until and unless" Congress amends the Bankruptcy Code, "we see no basis for the courts to change the longstanding rule as to nondischargeability of post-petition interest").

Tuttle raises two additional issues, neither of which we find meritorious. First, Tuttle contends the bankruptcy court erred in determining that the IRS was not bound by the terms of her Chapter 11 plan insofar as it purported to satisfy "any and all claims" of the IRS. According to Tuttle, the confirmation of her plan "destroyed the [IRS's] old claim, including any rights to gap interest." Aplt. Br. at 6. Tuttle's arguments are clearly foreclosed by the plain language of the Bankruptcy Code. Section 502(b)(2) of the Code specifically precluded the IRS from including gap interest as part of its claim against the estate. Thus, the plan's reference to "any and all claims" asserted by the IRS did not encompass the gap interest now sought by the IRS. Further, Tuttle is wrong in asserting that confirmation of her plan somehow "destroyed" her pre-petition tax debt to the IRS and any corresponding interest. As previously noted, § 1141(d)(2) specifically provides that confirmation of a Chapter 11 plan does not discharge a debtor from any debt listed in § 523, including priority tax claims.

In her second issue, Tuttle contends the bankruptcy court should have exercised its power under 11 U.S.C. § 105(a) (granting the bankruptcy court power to "issue any order,

_____

[5] Congress could, for example, amend the Code to allow for the collection of gap interest only if the debtor fails to successfully complete his or her confirmed Chapter 11 plan.

12

process, or judgment . . . necessary or appropriate to carry out the provisions of this title") to "rule that the obligation of the IRS has been paid in full." Aplt. Br. at 26. In support of her contention, Tuttle offers several reasons why it would be inequitable to allow the IRS to collect gap interest after she successfully has completed her plan. While her equitable arguments are compelling, they cannot overcome the plain language of the Code.

The judgment of the United States Bankruptcy Appellate Panel is AFFIRMED.