# UNITED STATES COURT OF APPEALS
## Tenth Circuit
### Byron White United States Courthouse
### 1823 Stout Street
### Denver, Colorado 80294
### (303) 844-3157

Patrick J. Fisher, Jr.                                                Elisabeth A. Shumaker
Clerk                                                                Chief Deputy Clerk

August 26, 1997

**TO:**  All recipients of the captioned opinion

**RE:**  96-4109, USA v. Victor; 96-4111, USA v. Brumback
July 11, 1997

Please be advised of the following correction to the captioned decision:

In the last full paragraph on page twelve of the opinion, the first sentence should read:

Sections 523(a)(1) and 507(a)(7) clearly instruct that tax debts are nondischargeable only if characterized as "allowed unsecured claims."

The corrected version of page twelve is attached for your convenience.

Very truly yours,

Patrick Fisher, Clerk

Susie Tidwell
Deputy Clerk

encl.

F I L E D
United States Court of Appeals
Tenth Circuit

JUL 11 1997

PATRICK FISHER
Clerk

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Appellant,<br><br>v.<br><br>GLENN B. VICTOR, JOYCE F. VICTOR, UTTAX, UTAH DEPARTMENT OF EMPLOYMENT SECURITY, DUJUANA ELAINE BRUMBACK, JOHN L. BRUMBACK,<br><br>   Appellees. | No. 96-4109 |
| UNITED STATES OF AMERICA,<br><br>   Appellant,<br><br>v.<br><br>JOHN L. BRUMBACK AND DUJUANA ELAINE BRUMBACK, doing business as Brumback Trucking,<br><br>   Appellees. | No. 96-4111 |

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 95-CV-196-S)
(D.C. No. 95-CV-381-S)

Gary D. Gray (Patricia M. Bowman with him on the briefs), Tax Division, Department of Justice, Washington, D.C., for Appellants.

Noel S. Hyde, Nielsen & Senior (Brent M. Burningham, Nielsen & Senior, Salt Lake City, Utah; and Steven A. Wuthrich, Sandy, Utah, with him on the briefs), Salt Lake City, Utah, for Appellees.

---

Before **PORFILIO**, **MCWILLIAMS,** and **LUCERO**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

These consolidated bankruptcy appeals present the question of whether the Internal Revenue Service (IRS) is entitled to post-petition, pre-confirmation interest -- so-called "gap period interest" -- on its secured pre-petition tax claims where the IRS neither asserted a claim for gap period interest nor objected to the debtors' confirmed plans which made no allowance for payment of such interest. We conclude these failures preclude recovery by the IRS and affirm the judgment of the district court.

## I.

The facts of the cases are not in dispute, but require some development to clearly set forth the parties' positions and our own conclusions of law. In 1982, John and DeJuana Brumback filed a petition for relief under Chapter 11 of the United States Bankruptcy Code. The IRS filed a proof of claim seeking payment of employment tax liabilities in the amount of $93,175.22 as of the petition date. Of that total, $60,208.80, including interest and penalties, was classified as a secured claim, perfected through a tax lien on debtors' property. The proof of claim contained the following standard language: "For the purposes of section 506(b) of the Bankruptcy Code, post petition interest may be payable" and "[t]o the extent that post petition penalties and interest are nondischargeable and remain unpaid, they may be collectible from the debtor."

The Brumbacks' reorganization plan was confirmed by order of the bankruptcy court on August 31, 1984. Article IV of the plan classified creditors' claims and provided in relevant part:

4.11 <u>Class XI</u>: The secured claim of the Internal Revenue Service as finally allowed and ordered paid by the Court to the extent that such claim is not greater than the value of the Debtors' assets.... The amount of this secured claim to be paid under the Plan is $60,208.80. This secured claim represents the full amount due to the Internal Revenue Service pursuant to its federal tax lien ....

Article VIII described treatment of impaired classes under the plan and provided the following detailed payment schedule for debtors' tax liability:

8.4(a) <u>Classes IV, V, VI, VII, VIII, X, and XI</u>: ... The claim of each of these creditors is less than the value of the property which is subject to the claim. Each of these creditors shall be paid the full amount of its claim, together with interest and other applicable charges at the rate provided in the underlying contracts or statutes which determine the claim of each creditor.

8.4(b) The claims of these creditors shall be paid, together with interest, in monthly installments ... as set forth in the table below.

....

| Class | Claim | Rate of Interest | Monthly Payment | Number of Payments |
|-------|-------|------------------|-----------------|--------------------|
| .... | | | | |
| XI | 60,208.80 | 12.00 | 1,339.31 | 60 |

The Brumbacks' confirmed plan also provided for full payment of the IRS's priority unsecured tax claim, including interest and penalties, of $32,966.42. The plan did not provide for the payment of gap period interest.

In July 1992, the Brumbacks and the IRS resolved an accounting dispute by fixing debtors' outstanding balance at $26,500 as of May 1992, and agreeing to a payment schedule. Immediately thereafter, the bankruptcy court entered a final decree closing the Brumbacks' case, concluding "upon satisfaction of the terms and conditions of the Stipulation between the Debtors and the Internal Revenue Service, the debtors will have

fully satisfied all obligations arising under their confirmed Chapter 11 Plan of Reorganization." The IRS notified the Brumbacks on March 19, 1993, that all IRS obligations under the plan had been satisfied. The letter also informed them "[a]s you know, there still exists an issue regarding the gap interest."

In June 1994, the Brumbacks sought a declaratory judgment from the bankruptcy court that unasserted gap period interest on the IRS's secured claim had been discharged upon confirmation of the reorganization plan and the IRS could not collect $14,974.50 for such interest. The court granted the Brumbacks' motion for summary judgment, concluding the debtors' obligations had been delineated clearly in both the reorganization plan and the stipulated agreement. Because, the court reasoned, the IRS did not file a claim for the interest, did not object to confirmation of the plan on the ground that it did not provide for interest, and did not, over the course of more than ten years, ever indicate its intention to collect gap period interest on its secured claims, the government was not entitled to pursue recovery of the interest outside the terms of the plan. The IRS appealed to the district court.

In June 1986, Glenn Victor filed a petition for relief under Chapter 11 of the Bankruptcy Code. The IRS filed a proof of claim for employment taxes for $74,002.17; the secured portion of its claim totaled $70,891.30 including interest and penalties. The proof of claim form included identical language to that contained in the Brumbacks' form, noting that post-petition interest "may be collectible from the debtor."

After two and a half years and several attempts to develop a reorganization plan acceptable to secured creditors including the IRS, the bankruptcy court confirmed Mr. Victor's plan in December 1988 and, pursuant to 11 U.S.C. § 1141, discharged debtor "of any and all debts and liabilities" except as provided in that section. In its confirmation order, the court noted the IRS had withdrawn all previous objections to Mr. Victor's plan with the exception of an objection based on feasibility.

The Victor reorganization plan provided for full payment of the IRS's secured and priority unsecured claims including interest and penalties; Article XI of the plan detailed the payment schedule:

> Class IV:  Secured claims of the IRS:
>     IRS: The total secured claim of $45,330.67, or such sum more or less as comprises actual principal, will be paid in payments of a size sufficient to pay IRS within six years, six such payments per year for the months May, June, July, August, September, and October.
>     In addition interest at 11% or as ultimately determined and penalties, if any, ultimately required, ($13,771.77 interest and $14,517.52 penalties claimed) together with interest resulting from amortization will be determined and paid over six years, six per year, for the months of May, June, July, August, September, and October, the amount of payments to conform to schedule submitted by creditor and approved by the Court.

Additionally, a separate provision specified interest applicable to each creditor's claims, directing that interest be paid as follows:

> Class IV, secured claims of the IRS -- 11% per annum, payable pro rata with monthly payments, or at such rate as ultimately determined by the Court;
>     ....
> Class VI, IRS priority claims -- 11% per annum, payable pro rata with monthly payments, or at such rate as ultimately determined by the Court....

The plan did not provide for the payment of gap period interest.

In December 1993, with prior approval from the court, Mr. Victor sold the Grand Ice Cream Parlor, and proceeds of approximately $140,000 were distributed to secured creditors to satisfy their bankruptcy claims, including the IRS's stipulated balance of $43,769.41. Just prior to the sale, however, the IRS informed Mr. Victor that his obligation to the IRS included gap period interest in the amount of $22,202.27. The IRS asserted a claim to the remaining $22,500 of sale proceeds, and Mr. Victor filed an adversary complaint requesting the bankruptcy court to determine the extent of the liens on the proceeds. After considering the record and hearing argument, the court denied the IRS's claim, holding the gap period interest was discharged upon confirmation of the reorganization plan. The IRS appealed, and the two cases were consolidated for proceedings in the district court.

In the district court, the IRS argued the gap period interest, as part of the debtors' employment tax liability, survived the dischargeability provision of 11 U.S.C. § 1141(d) which excepts from discharge certain debts listed in §§ 523 and 507(a). The district court rejected the argument, reasoning that because the IRS's claims were secured, they did not qualify as "allowed unsecured claims" excepted from discharge under § 507(a)(7).[1]

---

[1] The Bankruptcy Reform Act of 1994 added a new § 507(a)(7) and renumbered the prior § 507(a)(7) as § 507(a)(8). *See* Pub. L. No. 103-394, § 304(c), 108 Stat. 4106. The amendments do not apply to cases filed before October 22, 1994; accordingly, all references are to former § 507.

Consequently, the court concluded the IRS was bound by the terms of the plan, and any unaddressed claim for post-petition interest had been discharged upon confirmation. On appeal, the IRS challenges the district court's interpretation of the Bankruptcy Code, contending §§ 523(a)(1)(A) and 507(a)(7) render the debtors' liability for employment taxes nondischargeable and thus collectible outside the terms of the reorganization plans. We review this legal question de novo, *In re Grynberg*, 986 F.2d 367, 369 (10th Cir. 1993), and affirm.

II.

Section 1141 of the Bankruptcy Code delineates the effects of plan confirmation and provides in relevant part:

> (a) Except as provided in subsections (d) (2) and (d) (3) of this section, the provisions of a confirmed plan bind the debtor, any entity issuing securities under the plan, any entity acquiring property under the plan, and any creditor, equity security holder, or general partner in the debtor, whether or not the claim or interest of such creditor, equity security holder, or general partner is impaired under the plan and whether or not such creditor, equity security holder, or general partner has accepted the plan.
> ....
> (d) (2) The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title.

11 U.S.C. § 1141. Interested parties, then, are generally bound by the terms of the confirmed plan. This rule, however, does not leave creditors without recourse; any creditor may attempt to modify treatment of particular claims by objecting to confirmation pursuant to Bankruptcy Rule 3020. 11 U.S.C. § 1128(b).

- 8 -

The IRS argues it could not have filed a claim for gap period interest nor objected to the plan on that basis since a claim for unmatured interest, including post-petition interest, is disallowed under § 502(b). We do not entirely dispute the government's contention. Section 502(b)(2)'s general rule suspending the accrual of interest on claims as of the filing date of the petition ensures convenient administration of cases and equity in distribution. *See* 4 *Collier on Bankruptcy* ¶ 502.03[3][a], p.502-29 (15th ed. 1997). "The rule makes it possible to calculate the amount of claims easily and assures that creditors at the bottom rungs of the priority ladder are not prejudiced by the delays inherent in liquidation and distribution of the estate." **In re Hanna**, 872 F.2d 829, 830 (8th Cir. 1989). In the case of secured creditors, however, payment of post-petition interest is permitted where the value of the collateral exceeds the value of the claim because that collateral acts as security for both the interest and the principal debt, eradicating concerns about administrative convenience and fairness. *See* 11 U.S.C. § 506(b); 4 *Collier*, at ¶ 502.03[3][d], p.502-35; **United States v. Ron Pair Enterprises, Inc.**, 489 U.S. 235, 241 (1989). A creditor with this type of claim may certainly object to a reorganization plan on the ground that it did not provide for post-petition interest. **Ron Pair Enterprises**, 489 U.S. at 241.

Though the IRS insists it does not enjoy the status of an oversecured creditor for purposes of these proceedings, the terms of the Brumbacks' plan expressly provided that the IRS's claim was "less than the value of the property which is subject to the claim."

Similarly, Mr. Victor's confirmed plan listed assets of $324,162, and liability of $220,924, and provided that in the event of liquidation, all creditors could realize full value of their claims.  Under these circumstances, we find the government's assertion that its lips were forced to remain sealed for seven years in Mr. Victor's case and eleven years in the Brumbacks' case a tad disingenuous.

Even if we accept the IRS's characterization of its status as a mere secured creditor, however, the government's argument regarding the impossibility of providing fair notice[2] advances its position only so far.  Section 502(b) does not simply prohibit certain creditors from filing a proof of claim for post-petition interest; it prohibits those creditors from collecting the interest from the bankruptcy estate.  *See In re Fullmer*, 962 F.2d 1463, 1467 (10th Cir. 1992). The government, then, must show it is somehow otherwise entitled to the post-petition interest on its secured claims.  The IRS theorizes that its entitlement flows from the fact that the interest, as part of a nondischargeable tax debt, survives bankruptcy as the debtors' personal liability and, consequently, can be recovered notwithstanding the terms of the confirmed plans or the rules regulating bankruptcy proceedings.  The IRS is only  partly correct.

---

[2]  We are unimpressed with the IRS's argument that the boilerplate language in small print on its proof of claim form constituted adequate notice the government intended to assert a claim for the gap period interest, particularly when that language served as the final word on the matter for more than seven years in these cases.

Admittedly, interest that accrues on a nondischargeable tax debt is an integral part of an underlying tax claim and is generally treated the same as the original claim. *In re Hanna*, 872 F.2d at 830. But here, that proposition lacks force unless the IRS's secured claim qualifies as a nondischargeable debt under the relevant sections of the Bankruptcy Code. We conclude that it does not.

Section 1141 of the Bankruptcy Code excepts from discharge any debt that arose before the date of confirmation of the reorganization plan, but expressly excepts "any debt excepted from discharge under section 523 of this title." 11 U.S.C. § 1141(d)(2). In turn, § 523(a)(1) provides in part :

> (a) a discharge under section ... 1141 ... does not discharge an individual debtor from any debt --
> > (1) for a tax ... --
> > > (A) of the kind and for the periods specified in section ... 507(a)(7) of this title, whether or not a claim for such tax was filed or allowed;
> > > ....

Section 507(a)(7) defines the type of taxes not subject to discharge:

> (7) Seventh, **allowed unsecured claims** of governmental units; only to the extent that such claims are for --
> > ....
> > (C) a tax required to be collected or withheld and for which the debtor is liable in whatever capacity;
> > (D) an employment tax on wages, salary, or commission of a kind specified in paragraph (3) of this subsection earned from the debtor before the date of the filing of the petition, whether or not actually paid before such date, for which a return is last due, under applicable law or under any extension, after three years before the date of the filing of the petition....

11 U.S.C. § 507(a)(7) (emphasis added).

The government contends the meaning of §§ 523(a)(1) and 507(a)(7) cannot be reconciled under a reading that requires the tax debt to be an **allowed unsecured claim** because § 523(a)(1) preserves debts for particular taxes "whether or not a claim for such tax was filed or allowed." Section 523(a)(1)'s concluding language, the IRS maintains, is rendered superfluous by this interpretation. The government argues the two sections can only mean the nature of the claim -- as filed, as allowed, or as unsecured -- has no bearing on whether it is of a kind intended to be excepted from dischargeability. We disagree.

Sections 523(a)(1) and 507(a)(7) clearly instruct that tax debts are nondischargeable only if characterized as "allowed unsecured claims." We decline to attempt to create the kind of statutory harmony the IRS appears to be seeking. The language of these sections sufficiently alerts us to the types of debts that may properly survive dischargeability under 11 U.S.C. § 1141.

Other courts that have previously encountered this language have capably resolved the identical imperfections in the sections' construction. In *In re Spruill*, 83 B.R. 359 (Bankr. E.D.N.C. 1988), a creditor whose subrogated claim for property taxes was disallowed under § 502(b)(3) sought reimbursement from debtors alleging the taxes were nondischargeable under § 523(a)(1)(A). The debtors argued the tax did not satisfy the requirement that it be "of the kind ... specified in section ... 507(a)(7)" because that section refers to allowed unsecured claims and the creditor's claim had previously been disallowed by the court. In response, creditor, pointing out the same apparent ambiguity

discovered by the IRS, contended the nature of the claim was irrelevant for purposes of determining its nondischargeability since § 523(a)(1)(A) preserved debts whether or not a claim was filed or allowed. *Id.* at 361. The court disagreed, reasoning the disallowed claim could not be "of a kind" intended to be excepted from discharge under § 523, notwithstanding the concluding language of that section. *Id.* at 362.

In *In re Gurwitch*, 794 F.2d 584 (11th Cir. 1986), the Eleventh Circuit permitted the IRS to enforce claims for nondischargeable taxes against the debtor apart from the confirmed reorganization plan. Relying only upon §§ 1141(d)(2) and 523(a)(1)(A), the court determined the IRS's failure to file a claim for the taxes did not prevent recovery since § 523 rendered the taxes nondischargeable whether or not a claim was filed or allowed. *Id.* at 585.

*In re Gurwitch*, however, cannot strengthen the government's position in this case. First, the court never considered the introductory language of § 507(a)(7) and thus avoided the linguistic perils focused upon by the IRS. Second, the court rejected debtor's argument in part for policy reasons, stating that "Congress has made the choice between collection of revenue and rehabilitation of the debtor by making it extremely difficult for a debtor to avoid payment of taxes under the Bankruptcy Code." *Id.* at 585-86. Congress has made a different choice with regard to post-petition interest, however, and that choice is reflected in the Bankruptcy Code's general rule halting the accrual of interest at the time debtor files a petition. *See* 11 U.S.C. § 502(b).

Furthermore, we are not convinced that any lack of clarity in the language of § 523(a)(1)(A) is resolved by the IRS's construction. In an attempt to reconcile the word "allowed" in §§ 523(a)(1)(A) and 507(a)(7), the interpretation offered by the government would simply nullify the meaning of the more significant word "unsecured." We believe the better reading preserves the unambiguous directive that claims deserving priority status under § 507(a)(7) must be unsecured.

The government's reliance on legislative history is also misplaced. "The plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters.'" **Ron Pair Enterprises**, 489 U.S. at 242 (quoting **Griffin v. Oceanic Contractors, Inc.**, 458 U.S. 564, 571 (1982)). It is apparent that excepting from discharge only those debts under § 507(a)(1) held by unsecured claims does not contravene the intent of the drafters of the Bankruptcy Code; indeed the purpose of § 507 is to set priorities for repayment of certain unsecured claims.[3] The creation of § 507 evidences Congress's acknowledgment that particular types of unsecured claims deserve special status to ensure repayment before depletion of the bankruptcy estate. *See* 4 *Collier on Bankruptcy* ¶ 507.02[1][a], p.507-13; **In re Reichert**, 138 B.R. 522, 526

---

[3] We note that under the 1994 amendments to the Bankruptcy Code, renumbered § 507(a)(7) refers to "allowed claims to a spouse, former spouse, or child of the debtor ...." The deletion of the word "unsecured" from one category only of § 507(a)(7) undercuts the government's theory the word appears as mere surplusage since the drafters clearly intended the modifier to apply to certain categories of claims and not to others.

(Bankr. W.D. Mich. 1992). It is unnecessary to extend that special status to secured

claims because those claims are entitled to repayment from an alternative source of funds

-- the value of the property encumbered by a lien. "The conclusion is inescapable that a

claim cannot be both secured and deserving of priority status under § 507 at the same

time."[4] *Reichert*, 138 B.R. at 526-27. *See also **In re Darnell***, 834 F.2d 1263, 1268 (6th

Cir. 1987) (maintaining distinction under the Bankruptcy Code between secured and

priority unsecured claims). The language of the Bankruptcy Code creates a distinction

between the two types of claims for purposes including repayment and dischargeability.

There is no reason to suspect Congress did not intend to create such a distinction.

Even if we did examine legislative history as the IRS urges, it would be of little

assistance to the government since we believe the legislative history of § 523(a)(1)(A)

actually favors the debtors' interpretation. The version of § 523(a)(1) contained in the

bill considered by the Senate in September 1978 provided that a tax entitled to specified

priorities would be excepted from discharge whether or not a claim for such tax had been

filed. The Report of the Senate Judiciary Committee on H.R.S. 2266 makes this comment

upon the Senate version of § 523(a)(1):

---

[4] The government insists the district court erred in relying on *In re Reichert*, because the court in that case examined the connection between §§ 1129(a)(9)(C) and 507(a)(7) rather than between §§ 523(a)(1)(A) and 507(a)(7). We recognize *Reichert* does not directly solve the problem presented to this court; still, we find the bankruptcy court's insightful analysis of the distinction between secured and unsecured claims and the advantages afforded creditors holding each to be illuminating even when applied to other sections of the Code.

Subsection (a) lists nine kinds of debts excepted from discharge. Taxes that are excepted from discharge are set forth in paragraph (1) ... These categories include taxes for which the tax authority failed to file a claim against the estate or filed its claim late. Whether or not the taxing authority's claim is secured will also not affect the claim's nondischargeability if the tax liability in question is otherwise entitled to priority.

S. Rep. No. 95-989, 95th Cong., 2d Sess. 77-78 (1978), 1978 U.S.C.C.A.N. 5787, 5863.

The House version of § 523(a) focused on the allowance of claims, and made no reference to whether the claim had been filed or was secured; the bill excepted from discharge any debt for a tax "of the kind and for the periods specified in 507(6) [renumbered 507(7) at the time of these proceedings] of this title, whether or not a claim for such tax was allowed." H.R. 8200, 95th Cong., 1st Sess. § 523(a)(1) (1977). The final version of § 523(a) included language from the Senate bill concerning the filing of a claim and from the House bill concerning allowance of a claim; but in the end, Congress omitted the language that would have brought both secured and unsecured claims under the purview of § 507. Though careful not to overemphasize the significance of the history of § 523(a)(1), we nonetheless find the progression of the provision's language more consistent with an interpretation upholding the distinction between unsecured and secured tax claims.

We conclude §§ 523(a)(1)(A) and 507(a)(7) clearly authorize the exception of tax debts and interest from dischargeability under 11 U.S.C. § 1141(d)(2) only when the governmental entity holds an unsecured claim to that debt. Accordingly, we **AFFIRM** the judgment of the district court.

- 16 -