**William M. MILLER, Reorganized Debtor, Plaintiff–Appellant,**

v.

**UNITED STATES of America, through its Department of Treasury, Internal Revenue Service; State of California, through its State Board of Equalization, Defendants–Appellees.**

**No. 02–17073.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 12, 2004.

Filed April 13, 2004.

---

Diane H. Kutzko, Shuttleworth & Ingersoll, P.L.C., Cedar Rapids, IA, for the appellant.

Joel McElvain, Tax Division, Department of Justice, Washington, DC, for the appellees.

Before HALL, T.G. NELSON, and GRABER, Circuit Judges.

CYNTHIA HOLCOMB HALL, Senior Circuit Judge:

Petitioner William Miller appeals the district court's affirmance of a bankruptcy court ruling which concluded that his Chapter 11 plan did not discharge his obligation to pay post-petition, pre-confirmation ("gap period") interest on taxes owed to the Internal Revenue Service ("IRS").[1] Miller contends that the IRS must be precluded from challenging the Chapter 11 plan, which he deems to have unambiguously indicated its intent to discharge any liability for gap period interest, on res

---

1. Technically, the party-in-interest for this appeal is the United States of America, through the IRS. For ease of reference, the defendants-appellees will hereinafter be referred to as merely the IRS.

judicata grounds. In the alternative, Miller urges the panel to construe the language of the Chapter 11 plan and the applicable provisions of the Bankruptcy Code as excepting from discharge the interest which accrues on a tax debt only when the government's claim to that debt is unsecured.

We have jurisdiction over the district court's order affirming the decision of the bankruptcy court pursuant to 28 U.S.C. §§ 158(d), 1291. We now affirm.

## I.

### BACKGROUND

William Miller was the sole shareholder of Rosalie's Restaurant Associates, an incorporated entity which failed to pay the requisite employment taxes for the first quarter of 1989. On October 3, 1989, Miller was assessed a trust fund recovery penalty by the IRS, which subsequently recorded Notices of Federal Tax Liens in California and Iowa. Miller filed for Chapter 11 bankruptcy on December 20, 1989.

On December 28, 1992, the IRS was granted an allowed secured claim against Miller's bankruptcy estate in the amount of $268,079.64, and an allowed unsecured priority claim in the amount of $509,265.48. Miller filed a Chapter 11 Plan of Reorganization on January 24, 1994. Miller's proposed plan, with several modifications, was confirmed on April 4, 1994.

Article XI of Miller's confirmed plan, titled "Discharge and Injunction," is the primary basis of contention between the parties. In pertinent part, it provided:

> Except as otherwise provided in the Confirmation Order or this Plan, the Confirmation Order will act as a discharge and termination, as of the Effective Date, of any and all liabilities and debts of, and claims against the Debtor that arose at any time before the Confirmation Order, including any interest ac-

crued on such claims from and after the Petition Date....

> ... [A]ll ... debts and interests shall be conclusively deemed released and discharged, as provided in 11 U.S.C. 524 and 1141....

Prior to confirmation, the IRS sent a letter to Miller's counsel on February 19, 1994, in which the IRS explained that "a debtor is ineligible to receive a discharge from certain types of federal taxes in a Chapter 11 case." Specifically, the letter noted that the post-petition, gap period interest accruing on Miller's tax debt "constitute[d] a nondischargeable claim" that the IRS was not willing to concede. In response, Miller's counsel assured the IRS, in a letter dated March 7, 1994, that any "post-petition interest obligations" were "outside the scope of this plan, ... and therefore cannot be done as part of the plan."

On April 13, 2000, following the transmission of a final payment to the IRS, Miller filed an adversary complaint in the Bankruptcy Court for the Eastern District of California, seeking a declaration that his tax obligations to the IRS under the plan had been satisfied. On August 11, 2000, Miller moved for summary judgment in his declaratory action.

On October 3, 2000, the bankruptcy court denied Miller's motion for summary judgment. The bankruptcy court concluded that, while confirmation orders generally constitute res judicata against subsequent appeals from parties who did not contest the order, the general rule was inapposite to the present case. Specifically, the court noted that the contract language was ambiguous with regard to the issue of the dischargeability of gap period interest, and res judicata could not bind the parties until that ambiguity was clarified.

Since res judicata did not operate to bar the IRS from pursuing its appeal, the

court proceeded to consider the merits of the underlying claim. The court decreed that any ambiguities in the plan language must be construed against Miller both because he was the drafter of the plan, and because the IRS could not be deemed to have waived a statutory right in the absence of an unmistakably clear statement indicating its intention to do so. Applying that construction to Article XI, the court substantively concluded that Miller's tax debts were nondischargeable under 11 U.S.C. §§ 523 and 1141, and that the gap period interest which accrued on those debts was, by extension, excepted from discharge as well.

On March 8, 2001, Miller filed a second motion for summary judgment. He urged the bankruptcy court to heed the reasoning posited by the Tenth Circuit in *United States v. Victor*, 121 F.3d 1383 (10th Cir. 1997), which concluded that a secured IRS claim for a trust fund recovery debt was dischargeable under 11 U.S.C. §§ 507(a)(7) (now (a)(8))[2] and 523(a)(1). The IRS opposed Miller's motion, and filed a cross-motion for summary judgment, urging the court to follow the rationale employed by the Eleventh Circuit in *Gust v. United States (In re Gust)*, 197 F.3d 1112 (11th Cir.1999) (per curiam), which rejected *Victor* in concluding that an IRS claim does not become dischargeable by virtue of being secured by a lien.

On May 2, 2001, the bankruptcy court awarded partial summary judgment to the IRS. The court was persuaded to follow the reasoning of *Gust*, and reject the holding of *Victor*, in support of its conclusion that the exception to discharge for tax debts articulated in 11 U.S.C. § 523(a)(1) was not limited to unsecured claims. However, the court scheduled a trial to determine several outstanding issues, including whether parol evidence was admis-

sible to aid in the interpretation of Article XI. On December 5, 2001, the court announced its holding that parol evidence was admissible to ascertain the meaning of the ambiguous language of Article XI. Further, the court declared that the evidence considered, namely the letters exchanged between the IRS and Miller's counsel, confirmed its earlier ruling that Article XI could not be interpreted as rendering Miller's liability for gap period interest dischargeable.

On December 28, 2001, Miller appealed the bankruptcy court's decision, and the IRS elected to have the appeal considered by the district court. On October 2, 2002, the district court filed an opinion in which it confirmed the judgment of the bankruptcy court. The district court considered the interplay of 11 U.S.C. §§ 523(a)(clarifying that certain types of debts of the kind listed in § 507(a) are nondischargeable whether or not a claim is filed) and 507(a)(8)(referring to tax debts of the type incurred by Miller). In addition, the court adopted the reasoning of *Gust*, concluding that § 523(a)(1) excepts from discharge tax debts such as the one involved in the instant case. Since the language of Article XI could be read to support the conclusion that debts were only discharged to the extent permissible under § 1141(d)(2)(cross-referring to § 523(a)), the district court concluded that the bankruptcy court had correctly resolved the ambiguity of Article XI in the IRS's favor.

## II.

### A. STANDARD OF REVIEW

■ A bankruptcy court's conclusions of law are reviewed *de novo*. *In re Reaves*, 285 F.3d 1152, 1155 (9th Cir.2002). Whether a contract is ambiguous is a ques-

---

**2.** In 1998, § 507(a)(7) was renumbered, without alteration, as § 507(a)(8). Henceforth, all references to the language of that section will be to § 507(a)(8).

tion of law. *Stratosphere Litig., LLC v. Grand Casinos, Inc.*, 298 F.3d 1137, 1143–44 (9th Cir.2002); *Roden v. Bergen Brunswig Corp.*, 107 Cal.App.4th 620, 132 Cal. Rptr.2d 549, 552 (Ct.App.2003).

■ The bankruptcy court's findings of fact are reviewed for clear error. *Reaves*, 285 F.3d at 1155. The issue of dischargeability of a debt is a mixed question of fact and law that is reviewed *de novo*. *Diamond v. Kolcum (In re Diamond)*, 285 F.3d 822, 826 (9th Cir.2002).

## B. PLAN AMBIGUITY

### 1. Res Judicata

■■ Miller implores the panel to refuse to consider the government's arguments regarding the interpretation of Article XI of his Chapter 11 plan on the grounds of res judicata. In order to facilitate the Bankruptcy Code's aim of providing a rehabilitating debtor with a "fresh start," an order confirming a bankruptcy plan is "binding on all parties and all questions that could have been raised pertaining to the plan are entitled to *res judicata* effect." *Trulis v. Barton*, 107 F.3d 685, 691 (9th Cir.1995). "If a creditor fails to protect its interests by timely objecting to a plan or appealing the confirmation order," the creditor is foreclosed from challenging any of the plan's provisions, "even if such a provision is inconsistent with the Code." *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 F.3d 1083, 1086 (9th Cir.1999) (internal quotation marks omitted). Miller contends that the failure of the IRS to object to the confirmation of the plan should preclude it from challenging Miller's obligations under the plan.

■ Although confirmation of a plan generally acts as a final order which binds all parties, regardless of whether they assented to the plan, a plan which is ambiguous as to a material term is subject to interpretation by a reviewing court. A Chapter 11 bankruptcy plan is essentially a contract between the debtor and his creditors, and must be interpreted according to the rules governing the interpretation of contracts. *Hillis Motors, Inc. v. Haw. Auto. Dealers Ass'n*, 997 F.2d 581, 588 (9th Cir.1993). It is a well-established maxim of contractual interpretation that a contract is ambiguous if it is "capable of more than one reasonable interpretation." *Badie v. Bank of Am.*, 67 Cal.App.4th 779, 79 Cal.Rptr.2d 273, 286 (1998); *see also Local Motion, Inc. v. Niescher*, 105 F.3d 1278, 1280(9th Cir.1997) (per curiam) ("The existence of an ambiguity in a contract is . . . a matter of law. An ambiguous term is one susceptible to more than one reasonable interpretation.") (citations omitted). Where a contract is ambiguous, "it is the court's task to determine the ultimate construction to be placed on the ambiguous language by applying the standard rules of interpretation in order to give effect to the mutual intention of the parties." *Badie*, 79 Cal.Rptr.2d at 286. If indeed Article XI is deemed to have been ambiguous, then the principles of res judicata do not operate to bar the government from asserting its position.

■ Miller insists that the language of Article XI unambiguously indicates that the intent of the plan was to discharge him from any obligation for gap period interest. The first paragraph of Article XI states that, "[e]xcept as otherwise provided in the Confirmation Order or this Plan," all pre-confirmation debts, including those for "interest accrued on such claims from and after the Petition Date," are discharged. Both Miller and the courts below agreed that the first paragraph incontrovertibly was intended to cover debts such as the gap period interest sought by the IRS.

· However, Miller disputes the lower courts' reading of the second paragraph of Article XI, which states that all pre-confir-

mation debts "shall be conclusively deemed released and discharged, as provided in 11 U.S.C. 524 and 1141." At issue is the interpretation of the phrase "as provided in" § 1141. Section 1141 provides generally for the discharge of debts in a Chapter 11 bankruptcy proceeding. Section 1141(d)(1) states that "the confirmation of a plan (A) discharges the debtor from any debt that arose before the date of such confirmation." 11 U.S.C. § 1141(d)(1)(A).

However, § 1141(d)(2) sets forth explicit exceptions to the general discharge provision. Specifically, it states: "The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title." *Id.* § 1141(d)(2).

In support of his interpretation of Article XI, Miller points to the title of the Article ("Discharge and Injunction") and the Article's explicit reference to two sections in which debt is discharged— § 524 (outlining the effects of discharge) and § 1141—as evidence that the Article was intended to operate as a discharge of any obligation to pay the IRS gap period interest.

On the other hand, the IRS argues that the Article was not intended to discharge the IRS's otherwise nondischargeable claims. The IRS points to the facts that (1) Article XI was a general provision governing all claims rather than a provision defining the treatment of the IRS's claims specifically, and (2) the Article expressly limits its scope by the "[e]xcept as otherwise provided" language, and the reference to the whole of § 1141, which includes the enumerated exception in § 1141(d)(2).

Whether to accept the former interpretation, or the latter, depends entirely on how one parses the phrase "as provided in." At this stage, we need not resolve that issue, since it is plain that, contrary to Miller's contention, the interpretation suggested by the IRS is a reasonable one. There was no indication that the Article's reference to § 1141 was intended to be circumscribed in any manner whatsoever, and the limiting language at the commencement of the Article arguably implies that some sort of limitation will be forthcoming. Since reasonable minds can differ as to whether "as provided in" was intended as a mere modifier of "discharged," or was rather a more global reference to § 1141 in its entirety, which indicated that § 1141(d)(2) was the implicit limitation of Article XI, that term of the plan is "capable of more than one reasonable interpretation." [3] *Badie,* 79 Cal.Rptr.2d at 286.

## 2. Interpretation of Ambiguity

 Even though Article XI properly is construed as ambiguous, Miller nonetheless contends that the courts below erred in construing the ambiguous language against him. The courts below chose to construe the ambiguous language against Miller, first, based on the interpretive principle that ambiguous contractual

---

**3.** Miller also contends that the bankruptcy and district courts improperly considered extrinsic evidence to interpret the plan's language purporting to discharge gap period interest. His argument relies entirely on the principle that "parol evidence is inadmissible to 'interpret' unambiguous contract terms." However, because Article XI was appropriately deemed to be "reasonably susceptible" to the construction suggested by the IRS, it was entirely permissible for the courts below to consider extrinsic evidence in resolving the inherent ambiguity. *See Garcia v. Truck Ins. Exch.,* 36 Cal.3d 426, 204 Cal.Rptr. 435, 682 P.2d 1100, 1104 (1984) ("The test of admissibility of extrinsic evidence to explain the meaning of a written instrument is not whether it appears to the court to be plain and unambiguous on its face, but whether the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible.") (internal quotation marks omitted).

provisions are to be construed against their drafter. Under California law, where a contract is ambiguous, "the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist." CAL. CIV. CODE § 1654. Since bankruptcy plans are to be interpreted under the rules governing the interpretation of contracts, *Hillis Motors*, 997 F.2d at 588, the courts below were correct to have relied on § 1654 to conclude that the ambiguity in Article XI should be construed against Miller.

■ Second, the courts below construed the ambiguous language of Article XI against Miller on the ground that a plan in which the IRS consents to waive its right to collect an arguably nondischargeable tax debt requires a clear, explicit statement to that effect. *Cathay Bank v. Lee*, 14 Cal.App.4th 1533, 18 Cal.Rptr.2d 420, 423–24 (1993). In *Cathay Bank*, the court held that a waiver could be explicit enough to satisfy the clarity burden if it either identified the statutory right being waived by citation, or explained the substance of that right. *Id.* at 424–25. The language of Article XI does neither of those two things. Rather than spelling out in stark terms that the exceptions enumerated in § 1141(d)(2), which would have preserved the IRS's claims as nondischargeable debts, were not applicable, or stating unequivocally that otherwise nondischargeable debts are discharged by confirmation of the plan, Article XI merely incorporates a general reference to § 1141. As such, it is inescapable that the language of Article XI is insufficiently clear to war-

rant overriding the interpretive rule that statutory rights can be waived only by an explicit statement.

In the instant case, Article XI of Miller's Chapter 11 plan could plausibly be interpreted to support either his, or the IRS's position regarding the dischargeability of gap period interest. Moreover, the courts below properly concluded that the ambiguity with which they were presented should be construed against Miller's position. Therefore, res judicata does not bar the IRS from seeking a judicial resolution of the dispute.

## C. DISCHARGEABILITY OF GAP PERIOD INTEREST

■ Although the IRS is not barred from challenging Miller's interpretation of Article XI by the principles of res judicata, and the ambiguous Plan language may be construed against him, Miller urges this court to countenance an interpretation in which any obligation to pay gap period interest was discharged by his Chapter 11 Plan. Miller argues that the legislative intent is not readily discernable from the complex interplay among §§ 1141(d), 523(a), and 507(a)(8). Of course, in interpreting the command of a legislative enactment, the inquiry must begin, and may well end, with the text of the statute itself. *Patenaude v. Equitable Life Assurance Soc'y of the United States*, 290 F.3d 1020, 1025 (9th Cir.2002) ("[I]f the statutory language is clear, that is the end of our inquiry.") (internal quotation marks omitted). Section 1141 provides generally for the discharge of pre-confirmation debts in a Chapter 11 bankruptcy.[4] Section 1141(d)(2) specifically excepts from dis-

---

4. 11 U.S.C. § 1141(d) provides:
 (1) Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—
 (A) discharges the debtor from any debt that arose before the date of such confirmation, . . .

 (2) The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title.
 . . . .

charge those debts enumerated in § 523(a). Section 523(a), in turn, excepts from discharge "any debt ... for a tax ... of the kind ... specified in section ... 507(a)(8) of this title, whether or not a claim for such tax was filed or allowed." 11 U.S.C. § 523(a)(1)(A). Section 507(a)(8) establishes eighth level priority for "allowed unsecured claims of governmental units," including "a tax required to be collected or withheld and for which the debtor is liable in whatever capacity," such as a withholding tax required to be collected by an employer. 11 U.S.C. § 507(a)(8)(C).

Two courts of appeal which have analyzed the statutory framework have reached diametrically different conclusions regarding its meaning. Miller primarily relies on the Tenth Circuit decision in *Victor* for the proposition that the interplay among §§ 507(a)(8), 523(a), and 1141(d) compels the conclusion that any IRS claim for gap period interest is discharged unless it is an "allowed unsecured claim." Conversely, the IRS relies principally on the Eleventh Circuit's decision in *Gust* in beseeching this court to interpret the statutes to prohibit the discharge of tax obligations such as the one involved in the instant case. The issue of the appropriate interpretation of the statutory command is one of first impression in the circuit. We are persuaded that the Eleventh Circuit's reasoning in *Gust* adheres more closely to the statutory text, and we therefore adopt that interpretation.

### 1. United States v. Victor

In *Victor*, wherein the Tenth Circuit concluded that §§ 523(a)(1)(A) and 507(a)(8) "clearly instruct that tax debts are nondischargeable only if characterized as 'allowed unsecured claims,'" 121 F.3d at

1388, the IRS had perfected tax liens against two sets of debtors,[5] including John and DeJuana Brumback. The Chapter 11 reorganization plan included a clause in which the amount of the IRS's secured claim, $60,208.80, "represent[ed] the full amount due to the [IRS] pursuant to its federal tax lien." *Id.* at 1384. The plan did not provide for the payment of gap period interest. *Id.* at 1385. The Brumbacks sought a declaratory judgment that the unasserted gap period interest had been discharged upon confirmation of their Chapter 11 plan, since the IRS had not presented an allowed unsecured claim. *Id.* The IRS contended that the nature of the claim involved, *i.e.*, whether it was filed or not, whether it was allowed or disallowed, and whether it was secured or unsecured, had no bearing on whether the tax debt was "of the kind ... specified ... in section 507(a)(8)," and thus subject to an exception from discharge. *Id.* at 1388. Specifically, the IRS argued that the interpretation advanced by the debtors would render superfluous the plain language of § 523(a)(1), which preserves debts for particular types of taxes "whether or not a claim was filed or allowed." *Id.*

The *Victor* court rejected the IRS' "attempt to create ... statutory harmony," and held that the language of sections 523(a)(1) and 507(a)(8) serves as an "unambiguous directive that claims deserving priority status under § [507(a)(8) ] must be unsecured." *Id.* The court concluded that the reading suggested by the IRS would effectively read the word "unsecured" out of § 507(a)(8). *Id.*

### 2. In re Gust

In *Gust*, the Eleventh Circuit adopted the opinion of the district court, which had

---

**5.** *Victor* was a consolidation of two Chapter 11 cases, one involving John and DeJuana Brumback, and the other involving Glenn Victor. Since the two claims were nearly identi-

cal, the discussion of the facts underlying the *Victor* decision is confined to the facts of the Brumback case.

concluded that the bankruptcy court was correct in its assessment that "Section 523(a)(1)(A) addresses 'debt' arising from 'a tax,' 'of the kind' specified in § 507(a)(8), not debt evidenced by a claim described in § 507(a)(8)." 197 F.3d at 1116. Costas J. Gust was an officer of a defunct corporation, Con–Fleet Enterprises, Inc., which had failed to pay its employment tax obligations for nearly three years. *Id.* at 1113. The IRS assessed a Trust Fund Recovery Penalty against Gust in the amount of $18,413.85, plus interest, and filed a tax lien against his real and personal property. However, Gust then filed for "no asset" Chapter 7 bankruptcy protection. Because he listed no assets, his creditors did not file any claims, and his debts were discharged in February 1995. *Id.*

Two years later, Gust filed for Chapter 13 bankruptcy. The IRS, which had amended its lien to extend the effective period through 1999, filed a partially secured proof of claim in the amount of $52,612.26. Gust objected to the claim on the ground that the debt had been discharged in the Chapter 7 petition, because §§ 523(a)(1)(A) and 507(a)(8) only except unsecured claims from discharge. *Id.*

The court soundly rejected the debtor's argument. The court determined that there was no linguistic ambiguity in the interplay between § 507(a)(8), which only *excepts* allowed claims (while *prioritizing* allowed unsecured claims), and § 523(a)(1)(A), which excepts taxes from discharge whether or not they are allowed. *Id.* at 1114–15. Indeed, the court was quite convinced that the interplay between the two sections makes starkly clear that debts arising from a tax of the kind specified in § 507(a)(8) are excepted from discharge, regardless of their status as either secured or unsecured claims. *Id.* at 1115.

*3. Analysis*

We begin our interpretation of a statute by consulting the text of the statute itself. Courts must aspire to give meaning to every word of a legislative enactment, *United States v. Watkins*, 278 F.3d 961, 966 (9th Cir.2002), and it would be inappropriate to simply read a clause out of § 523(a)(1)(A) entirely. *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."). The decision in *Victor* does just that by placing undue emphasis on the type of *claim* that is at issue, rather than the type of *tax*. The plain language of § 523(a)(1)(A) makes explicit that, in determining whether a debt is subject to exception from discharge, it is utterly irrelevant "whether or not a claim for such tax was filed or allowed." To require a claim to have been unsecured, which by extension requires that it have been both filed and allowed, would eviscerate the language of § 523(a)(1)(A). *See In re Hornick*, 2000–1 U.S.T.C. (CCH) P50, 128, at *5–7 (Bankr. W.D.Pa.1999) (declining to follow *Victor* and concluding that the plain language of § 523(a)(1)(A) dictates a construction in which a debt for a tax "of the kind" enumerated in § 507(a)(8) must be excepted from discharge). There is no indication that the legislature intended to impose a requirement that, in order to be dischargeable under § 523(a)(1)(A), a tax *debt* must be a *claim* "entitled to priority" under § 507(a)(8). *See In re Norris*, 107 B.R. 592, 594 (Bankr.E.D.Tenn.1989).

Moreover, the *Victor* court's concern that an alternate reading would ignore the "unsecured" modifier in § 507(a)(8) glosses over the fact that "allowed unsecured claims" of government authorities remain

entitled to eighth-level priority, as specified by § 507, in connection with other Code provisions. For example, claims which are governed by the priority scheme set forth in § 507(a) must be "provide[d] for" by a Chapter 13 plan. 11 U.S.C. § 1322(a)(2). Thus, § 507(a) retains its vitality for determining the priority of distribution of the bankruptcy estate under other provisions of the Code.

The interpretation advanced by Miller, and adopted by the court in *Victor*, on the other hand, would lead to absurd results. If the *Victor* court's concern with limiting the scope of § 507(a)(8), in contexts other than the distribution priority it sets forth, were carried to its logical conclusion, what would one make of § 502(i)? Section 502(i) provides that claims which arise after the commencement of a case "for a tax entitled to priority under section 507(a)(8) ... shall be determined, and shall be allowed under subsection (a), (b), or (c) of this section, or disallowed under subsection (d) or (e) of this section, the same as if such claim had arisen before the date of the filing of the petition." 11 U.S.C. § 502(i). Certainly an "*allowed* unsecured claim" need not be determined to be either allowed or disallowed under § 502(i). Under the *Victor* court's analysis of cross-references to § 507(a)(8), § 502(i) would require a court to engage in the nonsensical exercise of determining whether an *allowed* claim ought to be allowed or disallowed. Such a result quite obviously would be absurd.

In addition to the unmistakable statutory command, the legislative purpose underlying the Bankruptcy Code would be undermined by an interpretation such as that suggested in *Victor*. "Congress has made the choice between collection of revenue and rehabilitation of the debtor by making it extremely difficult for a debtor to avoid payment of taxes under the Bankruptcy Code." *Gust*, 197 F.3d at 1115(quot-

ing *United States v. Gurwitch (In re Gurwitch)*, 794 F.2d 584, 585–86 (11th Cir. 1986)). Indeed, Congress explicitly addressed the issue of dischargeability when it stated: "Whether or not the taxing authority's claim is secured will ... not affect the claim's nondischargeability if the tax liability in question is otherwise entitled to priority." S.Rep. No. 95–989, 95th Cong., 2d Sess. (1978) at pp. 77–78.

The analysis of the *Victor* court would specifically contravene the legislative purpose by rendering it increasingly difficult for the government to preserve its claims. It would be difficult to envision "Congress intend[ing] to make unsecured claims nondischargeable while rendering a claim dischargeable if the government [had] sought to enforce payment by creating a lien." *Gust*, 197 F.3d at 1115(discussing *Latulippe v. INS (In re Latulippe)*, 13 B.R. 526, 527(Bankr.D.Vt.1981)). Under such a reading, the government's claim could survive discharge only if nothing had been done to protect it, an absurd result in which the IRS's position vis-a-vis an individual taxpayer would be substantially improved by its failure to perfect a claim for which it unquestionably is entitled to recovery. While we need not attempt to divine the legislative intent in a case where, as here, the language of the statute is clear, the legislative history suggests that our interpretation of the interplay among the statutes is correct.

Because the literal text of §§ 523(a)(1)(A) and 507(a)(8) unambiguously supports the conclusion reached by the Eleventh Circuit in *Gust*, and the legislative purpose underlying the Code provisions would be frustrated unnecessarily by the tortured rationale of the Tenth Circuit in *Victor*, we join the Eleventh Circuit in concluding that the interplay among §§ 1141(d)(2), 523(a)(1)(A), and 507(a)(8), renders an IRS claim for unpaid withhold-

ing taxes nondischargeable by a confirmed Chapter 11 bankruptcy plan, whether or not that claim was secured.

### III.

For the foregoing reasons, the district court's October 2, 2002, order affirming the bankruptcy court's opinion concluding that Miller's debt to the IRS was not discharged upon confirmation of his Chapter 11 Plan is AFFIRMED.